REVISED NOVEMBER 7, 2001

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 00-20538
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GLEN M. DAVIS, also known as Glen Davis,

Defendant-Appellant.

_____

Appeal from the United States District Court for the Southern
District of Texas, Houston
_____
October 4, 2001

Before DAVIS and JONES, Circuit Judges, and BARBOUR,[*] District
Judge.

W. EUGENE DAVIS, Circuit Judge:

Glen Davis challenges his conviction for narcotics
trafficking. Davis contends that his Sixth Amendment right to
counsel was violated because the district court did not
sufficiently warn Davis of the perils of self-representation, and
therefore Davis did not make a knowing and intelligent waiver of

_____

[*]District Judge of the Southern District of Mississippi,
sitting by designation.

1

his right to counsel.  For the reasons that follow, we agree that Davis did not receive adequate warnings.  We therefore vacate the conviction and remand for a new trial.

I.

Davis was tried on a one-count indictment for possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. 841(b)(1)(A).  During the trial, Davis became dissatisfied with his lawyer's performance.  After testimony by the ninth government witness, Davis asked to speak with the district court judge.  Although Davis's attorney, Gerald Fry, advised Davis not to speak on the record, Davis insisted.  Davis told the court that he had spent considerable effort preparing a list of questions for the witnesses, but Fry had refused to ask any of them.  Davis said, "If he's not going to help me, let me help myself....It's up to me now.  He said he's not going to use [my questions]....  If he's not going to help me ... then you don't need me here.  Y'all can have this trial without me."  The court responded that "We can't have it without you.  We can have it without your lawyer, though."

The court then announced that it would permit Davis to supplement Fry's examination of witnesses by asking his own questions after Fry had finished.  The court also excused Fry from making or responding to objections on Davis's behalf while Davis

2

examined witnesses.

The court advised Davis that "If you choose to disregard your counsel's advise, I will permit you to ask the very questions that ... your lawyer chooses not to ask." The court later had an additional exchange with Davis reflected in the margin.[2]

---

[2]THE COURT: You have been advised by your counsel that he does not believe that it's in your best interest not only to ask those questions but to participate in the trial. Hasn't he told you that?

DAVIS: Yes, sir.

***

THE COURT: All right. In spite of that advice, you're choosing to ask those questions yourself?

DAVIS: Yes, sir.

THE COURT: And to disregard his advice?

DAVIS: Yes, sir.

The court then inquired into Davis's mental and drug history, learning that Davis had been treated for drug addiction eight years earlier. This series of questions followed:

THE COURT: You believe, I gather, that you are capable of asking these questions without implicating yourself?

DAVIS: Yes, sir.

THE COURT: And if the answers implicate you, do you understand ... that that puts you in an awkward position–

DAVIS: Yes, sir, I do.

THE COURT: – with the jury?

DAVIS: Yes, sir, I do.

THE COURT: And also with your attorney?

3

The court permitted Davis to recall and question three government witnesses who Fry had already cross-examined. When Davis finished and the government was ready to call its next witness, the court altered the hybrid arrangement. Instead of allowing Davis to question witnesses after Fry had finished, the court directed that only one person examine further witnesses. The court required Davis and Fry to agree between themselves who would examine each witness.

Under this arrangement the trial proceeded to its conclusion. Davis cross-examined nine government witnesses and questioned two defense witnesses on his own. Fry only questioned one government witness and two defense witnesses under the hybrid arrangement. Of the nineteen witnesses examined by the defense at trial, Davis questioned fourteen. Fry made objections to the Government's questioning of one witness; responded to offers of government exhibits; assisted Davis in making a proffer of a witness's potential testimony; and moved for acquittal after the Government rested, but not at the close of all the evidence. Both Davis and Fry gave closing arguments.

---

DAVIS: Yes, sir, I do.

THE COURT: And you will not be able to simply to stand up and throw a temper tantrum if somebody doesn't ask some question the way you want or [do not], or says something that you believe is provocative from your perspective. You understand that, don't you?

DAVIS: Yes, sir.

4

The jury found Davis guilty and the court imposed a life sentence.  Following Davis's conviction and sentence, he lodged this appeal.  Davis's primary argument on appeal is that he was not adequately warned by the district court of the perils and disadvantages of self-representation.  He argues that as a result he did not knowingly waive his Sixth Amendment right to counsel.

## II.

In *Faretta v. California*,[2] the Supreme Court held that the Sixth Amendment entitles a criminal defendant to forgo the assistance of counsel and represent himself.  The Court said that the defendant must make this choice "knowingly and intelligently": "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.  For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."[3]  In order for a waiver to be knowing and intelligent, the trial judge must warn the defendant against the perils and disadvantages of self-representation.

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his

---

[2] 422 U.S. 806 (1975).

[3] *Id.* at 835 (citation omitted).

5

choice is made with eyes open."[4]

The question here is whether Davis made a sufficiently knowing and intelligent choice to represent himself, and this turns on whether the judge sufficiently warned Davis of the dangers of waiving his right to counsel.[5]

In *United States v. Martin*,[6] this court outlined in some detail what a trial judge must do before granting a defendant's request for self-representation.

> [T]he trial judge must caution the defendant about the dangers of such a course of action so that the record will establish that "he knows what he is doing and his choice is made with eyes open." In order to determine whether the right to counsel has been effectively waived, the proper inquiry is to evaluate the circumstances of each case as well as the background of the defendant.[7]

---

[4] *Id.* (citation omitted).

[5] The district court was quick perhaps too quick to interpret Davis's expression of dissatisfaction with his lawyer as a request to represent himself. As we said in *Moreno v. Estelle*:

> [A] defendant's request to be relieved of counsel in the form of a general statement of dissatisfaction with his attorney's work does not amount to an invocation of the *Faretta* right to represent oneself, especially when made on the morning of trial.

*Moreno*, 717 F.2d 171, 176 (5th Cir. 1983). The better course for the district court would have been to respond to Davis's complaints against his lawyer rather than suggesting that Davis could represent himself. After the district court made this suggestion, Davis adopted it. We therefore proceed from the premise that Davis made a *Faretta* request to represent himself.

[6] 790 F.2d 1215 (5th Cir. 1986).

[7] *Id.* at 1218 (internal citations omitted).

In particular, the district court must consider various factors, including

> the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.[8]

This court has consistently required trial courts to provide *Faretta* warnings.[9] We re-affirm what our decisions make clear: we require no sacrosanct litany for warning defendants against waiving the right to counsel.[10] Depending on the circumstances of the individual case, the district court must exercise its discretion in determining the precise nature of the warning.[11]

---

[8] *Id.* (internal citations omitted).

[9] *See, e.g., Chapman v. U.S.*, 553 F.2d 886, 892 (5th Cir. 1977) ("a trial judge should engage in a dialogue with such a defendant, explaining to him the consequences of defending *pro se*.").

[10] *See, e.g., Neal v. Texas,* 870 F.2d 312, 315 n. 3 (5th Cir. 1989); *Martin*, 790 F.2d at 1218; *Wiggins v. Procunier,* 753 F.2d 1318, 1320 (5th Cir. 1985); *Taylor v. Hopper,* 596 F.2d 1284 (5th Cir. 1979); *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir. 1980).

[11] The *Benchbook for U.S. District Court Judges*, published by the Federal Judicial Center, provides a guide for questions the judge can ask to convey the disadvantages the defendant will likely suffer if he proceeds *per se*:

(1) Have you ever studied law?

(2) Have you ever represented yourself in a criminal action?

(3) Do you understand that you are charged with these

crimes: [state the crimes with which the defendant is charged]?

(4) Do you understand that if you are found guilty of the crime charged in Count I the court must impose an assessment of $50 and could sentence you to as many as __ years in prison and fine you as much as $__ ? [Ask defendant a similar question for each crime with which he or she may be charged in the indictment or information.]

(5) Do you understand that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(6) Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will affect your sentence if you are found guilty?

(7) Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case.

(8) Are you familiar with the Federal Rules of Evidence?

(9) Do you understand that  the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

(10) Are you familiar with the Federal Rules of Criminal Procedure?

(11) Do you understand that  those rules govern the way a criminal action is tried in federal court?

[Then say to defendant something to this effect:]
(12) I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself.  I think it is unwise of you to try to represent yourself.  You are not familiar with the law. You are not familiar with court procedure.  You are not familiar with the rules of evidence.  I strongly urge you not to try to represent yourself.

(13) Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the

The Government argues that this case is not controlled by *Faretta* because this case involves "hybrid representation" of a sort that the Supreme Court has strongly implied is permissible – but has said is not required – under *Faretta*.[12] LaFave, however, suggests in his work on criminal procedure that "Under a hybrid form of representation, defendant and counsel act, in effect, as co-counsel, with each speaking for the defense during different phases of the trial....  Of course, since hybrid representation is in part pro se representation, allowing it without a proper *Faretta* inquiry can create constitutional difficulties."[13]

"Hybrid" or no, the representation sought by Davis entailed a waiver of his Sixth Amendment right to counsel that required the

---

difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

(14) Is your decision entirely voluntary?

[If the answers to the two preceding questions are yes, say something to the following effect:]
(15) I find that the defendant has knowingly and voluntarily waived his right to counsel. I therefore permit the defendant to represent himself [herself].

*Benchbook* 1.02 (4th ed. 2000).

[12] *See McKaskle v. Wiggins,* 465 U.S. 168, 168 (1984); *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996) ("there is no constitutional right to hybrid representation"); *Neal v. Texas,* 870 F.2d 312, 315-16 (5th Cir. 1989) (same).

[13] 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(g) (1999 & 2001 supp.).

safeguards specified in *Faretta*. The *Faretta* Court stated that "[o]f course, a State may – even over objection by the accused – appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."[14] Standby assistance of counsel, however, does not satisfy the Sixth Amendment right to counsel. "The assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel, required by the Sixth Amendment."[15]

## III.

The district court was not obliged to honor Davis's mid-trial request to represent himself.[16] Once it determined to do so, however, it was required to warn Davis of the perils and disadvantages of self-representation. The district court failed to discharge this responsibility. The court's reliance on the warnings against self-representation given by Davis's counsel, Fry, whom Davis no longer trusted, was not sufficient.[17]

---

[14] *Id.* at 834 n.46.

[15] *U.S. v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991).

[16] *See Moreno*, 717 F.2d at 176.

[17] Davis presents one other argument for appeal. He argues that the district court's refusal to subpoena his son was an abuse of discretion. Davis asked the court to fly his son from Ohio to

Because the trial court's warning against self-representation did not satisfy *Faretta*, Davis's Sixth Amendment right to counsel was violated.  We therefore must vacate Davis's conviction and remand for a new trial.

VACATED and REMANDED.

---

Houston so that he could testify that one of several documents was in his hand-writing.  Davis's mother was in Houston, however, and she could have identified Davis's son's hand-writing.  The district court did not abuse its discretion in denying this request.