# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2011

Lyle W. Cayce
Clerk

No. 10-31073

KELVIN LANDRY,

Petitioner–Appellee,

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY; JAMES D. CALDWELL, JR.,

Respondents–Appellants.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-263

Before JONES, Chief Judge, HAYNES, Circuit Judge, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

Kelvin Landry, convicted of second-degree murder and possession of a firearm by a convicted felon in Louisiana state court, was granted federal habeas relief by the district court after having been denied such relief by the Louisiana state courts. The district court held that Landry did not knowingly and

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31073

intelligently waive his right to counsel in the course of exercising his right to self-representation at trial.  The State of Louisiana has appealed.  Because we hold that the trial court's inquiry was sufficient, we reverse the district court's grant of habeas relief.

**I**

**A**

Kelvin Landry shot and killed Larry Porch, resulting in his conviction in Louisiana state court for second-degree murder and possession of a firearm by a convicted felon.  During his trial, Landry was found to have waived his right to counsel so that he could represent himself.  This appeal arises from Landry's complaints about the effectiveness of his waiver of counsel.

Prior to the State calling its final witness in its case in chief, Landry's appointed counsel notified the court that Landry had indicated a desire to take over his own defense.  Outside the jury's presence, the trial judge addressed Landry directly and, at the outset, confirmed that Landry understood that he had no duty to "say anything or do anything" at trial, that anything he said could be used against him, and that he had the right to representation by counsel.  The judge conveyed to Landry that it was his "sincere advice being a judge and practicing law for thirty years to caution [Landry] that the procedures of [the] courtroom and the law is better dealt with by attorneys than a layperson."

Initially, Landry gave the impression that he merely sought to testify, but his counsel clarified that Landry had "insisted that he needed to make some type of statement to the jury or act as his own counsel."  What followed was a disjointed discourse between the trial judge and Landry in which the judge attempted to obtain confirmation from Landry that his appointed counsel continued to represent him at trial.  After several indirect answers, Landry ultimately replied, "Yes, they're my attorneys."  During the colloquy, the judge explained that Landry's counsel would speak for him at trial, but that it would

ultimately be up to Landry whether to testify. Also, the judge twice suggested that it would be in Landry's best interest to follow his counsel's advice.

This did not resolve the matter because, when the jury returned, Landry's counsel expressed concern that Landry had not been sufficiently apprised of his right to self-representation. With the jury once again removed, the trial judge again addressed Landry. He reiterated that Landry had the right to representation by an appointed attorney, and he stated that the "three just and qualified attorneys" appointed to represent Landry had done so "in a very competent and capable manner." Landry was then advised that he had the right to represent himself if he so wished, although the judge twice advised him against doing so. When asked whether he understood his right to represent himself, Landry replied, "Yeah, I'm going to take that right up today to represent myself because, you know, my life is on the line here."

At this point, the trial judge explained the procedures with which Landry would have to comply while representing himself and, on several occasions, the judge reconfirmed that Landry intended to represent himself. The judge explained that courtroom procedures were subject to his discretion and that Landry would not be permitted to "badger witnesses," "badger [the] jury," "narrate," or "testify from down there." While Landry would be permitted to do what he felt he needed to do "in an orderly fashion," and he could look at any evidence, he would not be permitted to touch the gun. Additionally, the judge informed Landry that he retained the right not to testify and that the jury could not use his failure to do so against him. Landry indicated an understanding of these matters. Landry was advised that representing himself was "against [the judge's] advice and probably against [Landry's] previous attorney's advice." Furthermore, the judge said he would "highly suggest" Landry consult the assistance of his appointed counsel who would be ordered to assist him if he so wished.

No. 10-31073

Subsequently, when the court had moved on to the matter of the State's next witness, Landry's responses to inquiries from the judge appear to have led the judge to once again briefly explain the courtroom process. The judge made clear that Landry would not be permitted to talk continuously in the jury's presence—he would have to ask questions and take the witnesses' answers. It was explained that the State would call its next witness and, after the State rested, Landry would be permitted to call witnesses of his own. The judge also explained the assistance that Landry would receive from his former counsel in their new role as his standby counsel. They were ordered to assist Landry if he requested assistance or if they noticed something obvious. Following the explanation, Landry indicated his understanding of the assistance he would receive.

Before bringing the jury back for a second time, the judge once again sought confirmation that Landry intended to represent himself. Landry replied, "Yeah," but then indicated he wanted to do so with the assistance of his previously appointed counsel. Again, the judge sought clarification. This time he asked whether Landry wanted to do the questioning or whether he wanted his counsel to do so in accordance with his directions. Landry's responses led the judge to again question whether Landry wanted to represent himself or merely testify on his own behalf. When asked, Landry replied that he wanted to have his say in the courtroom and that he wanted "to have the opportunity to express [his] side of the events." This prompted a follow up question, and when Landry explained that he wanted to call the witnesses but have his counsel question them, the judge told him that only one person could question witnesses. Landry then indicated he wanted to be the one call his mother to the stand and question her.

4

No. 10-31073

The judge gave one final warning. He first stated that "as best the Court can understand and does feel that you have stated that you want to represent yourself and you want to question the witnesses." He then proceeded as follows:

> Now, I can tell you, you got a lot of years of service there between these three gentlemen. A lot of legal experience. I advise you not to do this; I advise you to let them represent you. If you represent yourself and what you are saying that then that's your choice, but don't come back later on and try to say that you didn't have effective counsel because you are your counsel. You are your own attorney; do you understand that?

Landry indicated that he understood, and once again affirmed his wish to represent himself. The jury returned, and Landry proceeded to act as his own counsel for a portion of the trial. Landry was found guilty of both charged offenses. He was sentenced to life imprisonment on the second-degree murder charge and a consecutive fifteen-year sentence for possession of a firearm by a convicted felon.

**B**

Landry completed his direct appeal and then filed an application for post-conviction relief in state district court in which he argued, for the first time, that his right to due process under the United States Constitution was violated by allowing him to represent himself without determining his background, education, experience, literacy, competency, understanding, and volition. The court denied the application, determining that every ground was, or could have been, raised on direct appeal. The Louisiana Court of Appeals, First Circuit and the Louisiana Supreme Court denied Landry's requests for supervisory writs regarding his application for post-conviction relief.

**C**

Landry later sought federal habeas relief in a 28 U.S.C. § 2254 petition, which included a claim identical to that raised in his state application for post-conviction relief. The magistrate judge recommended that Landry be denied

relief on all grounds except for his claim that his waiver of counsel was not knowing and intelligent.  The magistrate judge determined that Landry had "unequivocally asserted his right to self-representation" after having been informed that he had such a right and after being advised against exercising it.  However, even though the magistrate judge determined that the trial court had "advised [Landry] about expected courtroom behavior and procedures," the inquiry was deemed inadequate because Landry's request was granted "without first determining, on the record, [Landry's] age, education and other background, experience and conduct, or otherwise establishing on the record that [Landry] knew what he was doing and that his choice was made with his eyes open."  The magistrate judge determined that this was an unreasonable application of federal law requiring a new trial.

The district court adopted the magistrate judge's report and recommendation, along with the discussion therein, as its opinion, finding no merit in the State's objection that no specific criteria existed to guide a determination as to whether Landry's waiver of counsel was made knowingly and intelligently.  The district court determined that it is "well established that to determine whether a waiver is knowing and intelligent, the 'court *must* consider the defendant's age, education, background, experience and conduct.'"  Because the waiver was granted without making such a determination on the record, and because nothing in the trial transcript indicated that the trial judge knew and considered the relevant facts, the court held that the State had failed to establish that Landry knowingly and intelligently waived his right to counsel.  Accordingly, Landry's petition for habeas relief was granted, and the State was ordered to give him a new trial or release him from custody.

The State now appeals, asserting that Landry's waiver of counsel was valid.  The State argues that the inquiry conducted by the state trial court was

No. 10-31073

sufficient to ensure that Landry's waiver of counsel was knowingly and intelligently made.

## II

## A

At the outset, we note that the State failed to raise the fact that the state district court denied Landry's claim of ineffective waiver of counsel in his application for post-conviction relief because of Landry's procedural default. The Supreme Court has held that procedural default bars federal habeas relief,[1] but the Supreme Court has also held that a federal court of appeals is not required to raise the issue *sua sponte*.[2] We decline to invoke the procedural bar in this case because there is no compelling reason for us to do so when the State did not raise the issue in the district court or on appeal and neither the magistrate judge nor the district judge noted the possibility of procedural default. Nevertheless, it behooves the State, in the interest of defending its criminal judgments, and the federal trial courts, in the interest of federalism, to carefully consider whether to invoke and apply the procedural-bar doctrine whenever it applies.

## B

When reviewing a district court's grant of habeas relief, we review findings of fact for clear error, and we review issues of law and mixed issues of law and fact de novo.[3] Whether a defendant has effectively waived his right to counsel is a question of law.[4] This habeas proceeding is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because Landry filed his habeas

---

[1] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[2] *Trest v. Cain*, 522 U.S. 87, 89 (1997).

[3] *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).

[4] *Mann v. Scott*, 41 F.3d 968, 974 (5th Cir. 1994) (citing *Brewer v. Williams*, 430 U.S. 387, 397 n.4 (1977); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992)).

No. 10-31073

petition on April 27, 2009, subsequent to AEDPA's effective date of April 24, 1996.

Under AEDPA, the availability of federal habeas relief is limited with respect to claims previously "adjudicated on the merits in State court proceedings."[5] A federal court may not grant habeas relief to a state prisoner on a claim adjudicated on the merits in a state court proceeding unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6] To determine if these standards are applicable, we must first determine the threshold question of whether Landry's claim was adjudicated on the merits in the state court proceeding.

Adjudication on the merits is a "term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural."[7] When the disposition was procedural—and thus the claim was not adjudicated on the merits in state court—the standards of AEDPA do not apply.[8] Here, the state court record is unambiguous—Landry's claim was denied on procedural grounds. The court orally stated that habeas relief was being denied because every ground "either was or could have been" addressed in Landry's direct appeal, and the court's disposition of Landry's petition involved no discussion of the merits of Landry's ineffective waiver of counsel claim. This unambiguous disposition on

---

[5] 28 U.S.C. § 2254(d).

[6] *Id.*

[7] *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (en banc) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)).

[8] *Graves v. Dretke*, 442 F.3d 334, 339 (5th Cir. 2006).

8

No. 10-31073

procedural grounds renders the standards of AEDPA inapplicable,[9] and therefore we review de novo the issue of whether Landry effectively waived his right to counsel.[10]

## III

### A

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the assistance of counsel before he can be validly convicted and punished by imprisonment.[11] However, a criminal defendant that is unwilling to be represented by counsel has the right to forgo the assistance of counsel and conduct his own defense.[12] The decision to proceed *pro se* must be made voluntarily, knowingly, and intelligently,[13] and it is the trial judge's responsibility to ensure that this is the case.[14]

When waiving counsel at trial in order to proceed *pro se*, the criminal defendant "should be made aware of the dangers and disadvantages of self-

---

[9] *But see Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

[10] *See Hatten v. Quarterman*, 570 F.3d 595, 599-600 (5th Cir. 2009) ("In the absence of a state court 'adjudication on the merits' of a petitioner's claim, to which AEDPA requires deference under 28 U.S.C. § 2254(d), we review the district court's findings of fact for clear error and its legal conclusions *de novo*." (footnote omitted)); *Graves*, 442 F.3d at 339 (determining that the heightened standard of review provided by AEDPA does not apply where the state court dismissed claims on procedural-default grounds); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (indicating that "pre-AEDPA standards of review" apply with respect to claims not adjudicated on the merits in state court).

[11] *Faretta v. California*, 422 U.S. 806, 807 (1975).

[12] *Id.* at 834.

[13] *Id.* at 835 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)).

[14] *Zerbst*, 304 U.S. at 465.

representation."[15] In order to determine if the criminal defendant has effectively waived the right to counsel, this court has stated that "a district court must consider the totality-of-circumstances."[16] This requires consideration of various factors including

> the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.[17]

The Supreme Court "[has] not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel,"[18] and this court has emphasized that "there is no sacrosanct litany for warning defendants against waiving the right to counsel."[19] "[T]he district court must exercise its discretion in determining the precise nature of the warning."[20]

The presence of standby counsel does not satisfy the right to counsel,[21] and harmless error review is unavailable if a court errs in denying a criminal defendant the right to counsel at trial.[22] When raised in a collateral attack, the

---

[15] *Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (quoting *Faretta*, 422 U.S. at 836).

[16] *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (citing *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001)).

[17] *Id.* (quoting *Davis*, 269 F.3d at 518).

[18] *Tovar*, 541 U.S. at 88.

[19] *Virgil*, 444 F.3d at 453 (internal quotation omitted) (quoting *United States v. Jones*, 421 F.3d 359, 364 (5th Cir. 2005)).

[20] *Davis*, 269 F.3d at 519.

[21] *Virgil*, 444 F.3d at 453.

[22] *See United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984); *see also Virgil*, 444 F.3d at 455-56.

burden rests on the criminal defendant to prove that his waiver of counsel was ineffective.[23]

## B

The State argues that the district court erred in determining that Landry's waiver of counsel was not made knowingly and intelligently. The district court determined that "it is well established that to determine whether a waiver is knowing and intelligent, 'the court *must* consider the defendant's age, education, background, experience and conduct.'"[24] Because the waiver was granted without the trial court first determining this information on the record, or otherwise establishing that Landry knew what he was doing, the district court ruled that *the State* "[had] failed to establish that [Landry] knowingly and intelligently waived his right to counsel."[25]

In reviewing Landry's waiver of counsel de novo, we reiterate that Landry—not the State—bears the burden of proving that his waiver of counsel was ineffective.[26] Landry cannot carry this burden. Although Landry argued that his waiver of counsel was ineffective because the trial court did not first determine his background, education, experience, literacy, competency, understanding, and volition on the record, we require no such formula or script. The totality-of-circumstances must be considered.[27] The record indicates that the trial judge properly made Landry aware of the dangers and disadvantages

---

[23] *Tovar*, 541 U.S. at 92.

[24] *Landry v. Cain*, No. 09-263-BAJ-SCR, 2010 WL 4179828, at *1 (M.D. La. Oct. 20, 2010) (quoting *United States v. Joseph*, 333 F.3d 587, 590 (5th Cir. 2003)).

[25] *Id.*

[26] *See Tovar*, 541 U.S. at 92 ("[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel.").

[27] *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (citing *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001)).

of self-representation, and the colloquy between the trial judge and Landry sufficiently indicated that Landry's waiver was knowing and intelligent in light of the factors this court has indicated a trial court must consider.

This is not a case in which the trial court failed to conduct any inquiry into whether the waiver of counsel was made knowingly and intelligently.[28] This is also not a case in which the court did no more than "repeat its recommendation that a defendant proceed with his available qualified counsel."[29] The record is replete with evidence that the trial judge made a sufficient effort to ensure that Landry's waiver of counsel was knowing and intelligent. The judge—on multiple occasions—asked Landry if he wanted to represent himself, and Landry—on multiple occasions—indicated that he did, despite being repeatedly cautioned not to do so. The judge questioned Landry and confirmed that he understood his right to appointed counsel, that he did not have to "say anything or do anything at trial," that anything he did say could be used against him, and that he retained the ultimate right to decide whether to testify even if represented by counsel. The judge advised Landry "that the procedures of [the] courtroom and the law is better dealt with by attorneys than a layperson." The judge also told Landry the procedures with which he would be expected to comply. Emphasizing that courtroom procedures are better dealt with by attorneys, the judge told Landry he would "highly suggest" Landry consult his standby counsel. Additionally, the judge heard Landry indicate an understanding of the nature of the charges against him and the consequences of the proceedings when

---

[28] *See id.* at 454-55 (finding a violation of *Faretta* where "[t]he transcript [was] void of any indication that the district court sought to apprise [the defendant] of the 'perils and disadvantages of self-representation,' which is the minimum required by *Davis* and *Faretta*, much less engaged in any of the broader warnings suggested by *Davis*"); *see also Davis*, 269 F.3d at 520 (finding inadequate "[t]he court's reliance on the warnings against self-representation given by [the defendant's] counsel").

[29] *United States v. Jones*, 421 F.3d 359, 65 (5th Cir. 2005).

No. 10-31073

Landry stated that he was waiving counsel and proceeding *pro se* because his "life is on the line."

As we have stated before, we do not require the trial court to "follow a script," and we "[have] approved warnings much less thorough than the guidelines presented in the [Benchbook for U.S. District Court Judges]."[30]   In *United States v. Martin*, "we entertain[ed] no doubt that [the] waiver was knowingly, intelligently, and voluntarily made."[31]   There the trial court conducted a hearing in which the defendant was "cautioned . . . about the complexity of the trial and the pitfalls of self-representation," and "[u]pon specific inquiry, [the defendant] advised the court that he wished to represent himself, despite the potential difficulties."[32]

In *United States v. Joseph*, we also determined that the requirements for a knowing and intelligent waiver were satisfied.[33]   The defendant was properly informed of the dangers and disadvantages of self-representation: the court recommended he allow his attorneys to represent him, the court told him they were very good lawyers, and the court specifically recommended that his attorneys be allowed to question witnesses, conduct cross-examination, and put on evidence.[34]   Additionally, comments made by the defendant concerning his indictment and the possible sentence "indicate[d] that [he] understood the nature of the charges against him and the consequences of the proceedings."[35]

---

[30]  *Id.*.3d at 363-64.

[31] 790 F.2d 1215, 1218 (5th Cir. 1986).

[32] *Id.*

[33] 333 F.3d 587, 590 (5th Cir. 2003).

[34] *Id.*

[35] *Id.*

13

No. 10-31073

The facts here are analogous to those present in cases such as *Martin* and *Joseph*. Here, as in *Martin*, the trial court conducted a hearing in which the defendant was cautioned about the complexities of trial and the pitfalls of self-representation. Landry was warned that anything he might say in representing himself could be used against him, and he was warned of the difficulties and limitations imposed by court procedures. Landry, like the defendant in *Martin*, expressed his desire to represent himself despite these difficulties. As in *Joseph*, Landry was advised by the trial court that he had good lawyers whom the court recommended he permit to represent him—lawyers the court specifically recommended he consult if acting *pro se* in order to be able to comply with court procedures. Also, just as the defendant in *Joseph* indicated an understanding of the nature of the charges against him and the consequences of the proceedings by referring to his indictment and possible sentence, Landry showed a similar understanding by stating that he was proceeding *pro se* because his life was one the line. Accordingly, we are satisfied that Landry's waiver of counsel was effective as having been knowingly and intelligently made.

\*     \*     \*

The district court's judgment is REVERSED, and judgment is RENDERED DENYING the petition for writ of habeas corpus.

14