# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50034

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

EDWARD MESQUITI,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2017

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Western District of Texas

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Edward Mesquiti was charged in an indictment with one count of bank robbery and aiding and abetting thereof in violation of 18 U.S.C. §§ 2 and 2113(a). Prior to trial, the district court granted Mesquiti's motion to dismiss his attorney. The case eventually proceeded to a jury trial, with Mesquiti representing himself throughout the trial. The jury ultimately found Mesquiti guilty, and he was sentenced to 151 months of imprisonment. Now represented by the Federal Public Defender, Mesquiti appeals his conviction, arguing that the district court deprived him of his constitutional right to counsel by allowing him to represent himself and that the court reversibly erred in denying a

No. 16-50034

continuance.[1]    For the following reasons, we affirm the district court's judgment.

I

Mesquiti is a follower of the "sovereign citizen" movement, which we have described as "a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings." *United States v. Weast*, 811 F.3d 743, 746 n.5 (5th Cir. 2016). An indictment was filed against Mesquiti on April 2, 2014, charging him with bank robbery and aiding and abetting of same, in violation of 18 U.S.C. §§ 2 and 2113(a), and he was appointed counsel the next day. On April 8, 2014, the court granted Mesquiti's motion to replace his appointed counsel with a retained attorney, Richard Langlois. On July 30, Langlois received a letter from Mesquiti, notifying him that his "representation of the 'Corporate fiction/ens legis Debtor; Edward Mesquiti Jr. . . . is no longer needed" and asking him to notify the court of his removal as "legal representative."

The following day, Mesquiti filed with the court a pro se document titled "Notice and Declaration of Revocation of Power of Attorney and Notice and Declaration of Fraud and Notice to Cease and Desist," in which he said that "all power of attorney . . . is wholly revoked, extinguished, canceled, [and] made null and void." Langlois thereafter moved to withdraw as counsel, and, on August 20, a hearing on the motion was held before a magistrate judge. During the hearing, the magistrate judge repeatedly asked Mesquiti if he wished to represent himself, but Mesquiti was unresponsive, instead making

---

[1] Mesquiti also argues that the he was deprived of an opportunity to prepare and present a defense, in violation of the Sixth Amendment, because he lacked access to legal materials, but he concedes that this argument is foreclosed by *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996), and he raises the issue only to preserve it for possible further review.

statements consistent with his sovereign citizen ideology and asserting that he did "not consent to these proceedings." The magistrate judge concluded that he could not say that Mesquiti wished to represent himself, and he therefore appointed the Federal Public Defender to represent Mesquiti after granting Langlois's motion to withdraw.

On February 5, 2015, the court conducted a docket call, during which Mesquiti was uncooperative. After Mesquiti's appointed counsel, Alfredo Villarreal, announced that he represented him, Mesquiti declared, "[H]e is not here for me" and asserted that the court had "no subject matter jurisdiction." Both Villarreal and the Government's attorney expressed doubts about Mesquiti's competence to stand trial, and the district court ordered a competency evaluation. The court subsequently received a thorough report by a licensed psychologist opining that Mesquiti was competent to stand trial, his adherence to the sovereign citizen ideology notwithstanding. The report also noted that, with respect to his need for representation, Mesquiti stated that "he is not trying to represent himself nor does he need a lawyer because the need for representation comes after the court establishes it has jurisdiction over him." In light of the report's conclusions, the court found that Mesquiti was competent to stand trial.

On June 17, 2015, the court held a pretrial hearing during which Villarreal announced that Mesquiti was ready for trial. After the court explained to Mesquiti that his attorney stated that he wanted to go to trial, Mesquiti said, "Your Honor, I haven't accepted Mr. Villarreal as my attorney. I don't consent to him being my attorney. I have never asked him to be my attorney." The court construed Mesquiti's statement as "a motion to withdraw Villarreal as [his] attorney" and stated, "You have a right to represent yourself. The motion is granted. Mr. Villarreal will be standby counsel." The district court then warned Mesquiti that proceeding pro se was not advisable. The

court told Mesquiti that it was "generally a very bad idea to proceed pro se," that it was "always inadvisable" to do so, and that he "really need[ed] to have a lawyer." The district court told Mesquiti that he had been charged with a bank robbery, in violation of 18 U.S.C. § 2113, and informed him that, if found guilty, his sentencing guidelines range would be 121 to 151 months but that he would face up to twenty years of imprisonment. The court also warned Mesquiti that his jurisdictional arguments could not be continuously interjected into the trial, as they did not have "any legal merit." At the conclusion of the hearing, the court again advised Mesquiti:

> Again, I am telling you, it is always a bad idea for defendants to represent themselves, and so I highly caution you, don't go this approach. One hundred twenty-one to 151 months is a long time in prison and potentially you could be facing up to 20 years. And so you know what happened that day. You know what the evidence is the government has against you. Your codefendant, I believe, is going to be testifying against you, so this is not a good posture you are in.

When asked if he had anything to say, Mesquiti replied, "I don't accept Mr. Villarreal as my lawyer and I don't consent to these proceedings, sir." The court relieved Villarreal from representing Mesquiti and instructed him to serve as standby counsel, informing Mesquiti that he could change his mind and ask that Villarreal take over as lead counsel.

On the first day of trial, July 7, 2015, before jury selection began, Mesquiti stated to the court that he had been "locked up in segregation" and that he had had "no access to courts, no way to get paper, no way to write." The Government's attorney responded that she had mailed copies of all of the Government's filings to Mesquiti at his place of confinement, and she pointed out that all of the Government's evidence was available in the courtroom if he wished to review it. The district court construed Mesquiti's argument as a motion to dismiss the indictment and denied that purported motion.

No. 16-50034

Later that day, during an afternoon break in the trial proceedings, Mesquiti made the following statement:

> Your Honor, about my Sixth Amendment right to have my own witnesses, to have my own discovery evidence put in, I mean, I've been held under conditions that don't allow me to do any of that, to have — to subpoena witnesses, to have any kind of discovery added to this trial. I'm sure you can — I have the constitutional right to defend myself. And without my witnesses, I'm barred from putting on a defense.

In response, the district court stated that Mesquiti had known that his trial was scheduled for that day and that he had declined representation by an attorney and had insisted on representing himself. Mesquiti then asserted that he had been given discovery just forty-five minutes before the trial began, to which the district court responded that discovery had been provided to Mesquiti's counsel but he had refused to meet with his counsel.

At the close of the Government's case-in-chief, Mesquiti called no witnesses, and he rested without putting on any evidence. The jury found Mesquiti guilty, and the district court ultimately sentenced him to 151 months of imprisonment. Mesquiti appeals, challenging his conviction.

II

First, we discuss Mesquiti's contention that the district court deprived him of his constitutional right to counsel at a critical stage of the proceeding by allowing him to proceed pro se. Sixth Amendment challenges to the validity of a waiver of counsel are reviewed de novo. *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). To determine if the district court violated Mesquiti's right to counsel by dismissing counsel and relegating him to the status of standby counsel, we inquire whether Mesquiti properly waived his right to counsel. *See, e.g., United States v. Virgil*, 444 F.3d 447, 454

(5th Cir. 2006).  In the course of this inquiry, we ask whether the defendant in fact relinquished his right to counsel and whether he did so knowingly and intelligently.  *See id.* at 453.

A. Mesquiti Relinquished His Right to Counsel

"Where a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *United States v. Cano*, 519 F.3d 512, 517 (5th Cir. 2008) (quoting *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991)).  A defendant can waive his right to counsel implicitly, by his clear conduct, as well as by his express statement. *See, e.g., United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007).  As relevant here, because "indigent defendants have no right to appointed counsel of their choice," we have held that "a defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of" the right to counsel.  *Id.* (alteration omitted) (quoting *Richardson v. Lucas*, 741 F.2d 753, 757 (5th Cir. 1984)).  To constitute waiver, such a refusal must take the form of "a persistent, unreasonable demand for dismissal of counsel." *United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983).

Mesquiti contends that he had not waived his right to counsel at the pretrial hearing on June 15, 2015, before the court dismissed Villarreal from representation and instated him as standby counsel.  We conclude, however, that Mesquiti's actions before and on the day of the hearing constituted waiver of his right to counsel.  Mesquiti acted to terminate his representation by three different attorneys, retained and appointed.  He renounced his last two attorneys in hearings before two different courts.  At no point did Mesquiti articulate dissatisfaction with his particular counsel, and he never asked the court for substitute counsel.  While it is true that Mesquiti did not expressly say that he wished to represent himself, he "refus[ed] without good cause to proceed with able appointed counsel," *Fields*, 483 F.3d at 350 (quoting

6

*Richardson*, 741 F.2d at 757), and made "persistent, unreasonable demand[s] for dismissal of counsel," *Moore*, 706 F.2d at 540. Mesquiti's conduct therefore constituted a relinquishment of his right to counsel.

B. Mesquiti's Relinquishment of His Right to Counsel was "Knowing and Intelligent"

"Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent act done with sufficient awareness of the relevant circumstances.'" *Tovar*, 541 U.S. at 81 (alteration omitted) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). In *Faretta v. California*, the seminal case explaining the requirements for waiver of counsel, the Supreme Court mandated that the defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. 806, 835 (1975) (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)). However, the Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88.

We have required district courts to exercise discretion in determining the precise nature of the warning provided to a defendant seeking to represent himself, depending on the circumstances of the individual case. *E.g.*, *United States v. Davis*, 269 F.3d 514, 519 (5th Cir. 2001). The trial court must consider various factors, including "the defendant's age and education and other background, experience, and conduct." *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985) (citation omitted). "The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving." *Id.* (citation omitted).

No. 16-50034

Although, as explained, the precise nature of appropriate warnings depends on the particularities of the case, we have generally required trial courts to provide warnings of substance, including at least a modicum of specificity. For instance, in *United States v. Davis*, the defendant was dissatisfied with his attorney because the attorney refused to ask witnesses the questions the defendant had prepared. 269 F.3d at 516–17. The district court confirmed that the defendant wanted to proceed to ask the questions despite his attorney's advice that asking the questions was not in his best interest. The court also asked the defendant if he understood that if the answers implicated him, "that puts you in an awkward position . . . with the jury" and that he would not "be able to stand up and throw a temper tantrum if somebody . . . says something that you believe is provocative." *Id.* at 517 n.1. We concluded on appeal that the trial judge's warnings against self-representation, which relied largely on the warnings given by the same counsel that the defendant no longer trusted, were not sufficient to discharge the trial court's duties under *Faretta*. *See Davis*, 269 F.3d at 518.

Similarly, in *United States v. Jones*, "the district court recommended to [the defendant] that he have an attorney[,] . . . stated that his appointed counsel was highly qualified," and asked him if he "fully realized that representing himself was dangerous to him." 421 F.3d at 362, 364. On appeal, we found that "the district court took no steps, except in the most general way, to insure that Jones was 'aware of the dangers and disadvantages of self-representation'" and therefore concluded that the court did not do enough to protect the defendant's right to counsel. *Id.* at 364–65 (quoting *United States v. Joseph*, 333 F.3d 587, 590 (5th Cir. 2003)).

Where the record demonstrates that the trial court provided advisories that were more concrete, we have generally not required those warnings to be very detailed. For example, in *United States v. Joseph*, the district court

recommended several times that the defendant allow counsel to represent him because they were very good lawyers, and, after the court instructed the attorneys to serve as standby counsel, it recommended that the defendant allow counsel to question witnesses, conduct cross-examination, and put on any evidence on his behalf. 333 F.3d at 590.

We found that this was sufficient to inform the defendant of the dangers and disadvantages of self-representation. *Id.* Similarly, in *United States v. Fulton*, 131 F. App'x 441, 442–43 (5th Cir. 2005), we approved of the district court's warnings where they advised the defendant: (1) that his case was "complex" and involved "complex issues"; (2) that it was in his best interest to proceed with appointed counsel; and (3) that the defendant faced a "daunting task" if he chose to proceed on his own because he was facing a "very capable prosecutor."

The warnings that the district court provided to Mesquiti at the June 17 hearing satisfy the requirements of *Faretta*, as applied by our precedent. As an initial matter, the district court had all of the necessary information to assess Mesquiti's ability to understand its warnings regarding the perils of self-representation. The court had before it a thorough report concerning Mesquiti's competence to stand trial. This report described Mesquiti's age, education history, employment history, relationship history, substance use history, medical history, mental health history, and legal history. The report noted that Mesquiti was 51 years old, that he dropped out of high school in the eleventh grade but went on to receive his GED, that he continuously worked when he was not incarcerated, and that he was a man of average intelligence.

At the June 17 hearing, the district court on several occasions strongly warned Mesquiti that proceeding pro se was not advisable. The court informed Mesquiti that, if the jury found him guilty, the applicable sentencing guidelines range was 121 to 151 months of imprisonment but that he could face up to

twenty years of imprisonment. The court advised Mesquiti of the nature of the charges against him. The court also warned Mesquiti that his jurisdictional arguments could not be continuously interjected into the trial, as they did not have "any legal merit." The court further emphasized that the Government possessed substantial evidence against Mesquiti and that his codefendant was going to testify against him and thus explained that Mesquiti was "not [in] a good posture." In the face of these warnings by the court, Mesquiti stated, "I don't accept Mr. Villarreal as my lawyer and I don't consent to these proceedings."

Mesquiti complains that the court did not advise him that he would be giving up any right to access to legal research and did not warn him of the practical difficulties of subpoenaing witnesses or procuring defensive evidence that might be necessary to present a defense. We agree that the court's warnings could have been more concrete. *Cf. Tovar*, 541 U.S. at 89 ("'At trial . . . counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of *voir dire*, examine and cross-examine witnesses effectively, object to improper prosecution questions, and much more.' Warnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorously' conveyed." (alterations omitted) (quoting *Patterson v. Illinois*, 487 U.S. 285, 298, 299 & n.13 (1988))).[2] But we cannot say that the district court deprived Mesquiti of his right to counsel by failing to make these specific advisories.

---

[2] We have previously noted that "[t]he Benchbook for U.S. District Court Judges, published by the Federal Judicial Center, provides a guide for questions the judge can ask to convey the disadvantages the defendant will likely suffer if he proceeds pro se." *Jones*, 421 F.3d at 363; *Davis*, 269 F.3d at 519 n.11.

The court informed Mesquiti of the nature of the charge against him and the consequences of the proceedings and explained the difficulty of his particular case to him.  Importantly, the court also highlighted that Mesquiti would not be able to continuously advance his sovereign citizen theories to the jury, which seemed to have been the primary motivation behind Mesquiti's decision to waive his right to counsel.  The district court repeatedly and strongly advised Mesquiti against self-representation in the context of his particular case, and its warning equaled or exceeded those previously approved of by this court.  *See, e.g., Joseph*, 333 F.3d at 590.  There was no indication that Mesquiti, a man of average intelligence, did not understand the difficulties he faced by proceeding without counsel, and we are satisfied that he "kn[ew] what he [wa]s doing."  *See Faretta*, 422 U.S. at 835 (quoting *McCann*, 317 U.S. at 279).  Thus, we find that Mesquiti knowingly and intelligently relinquished his right to counsel at the June 17 hearing.  Accordingly, we conclude that the district court's dismissal of Villarreal from full representation did not deprive Mesquiti of his Sixth Amendment right to counsel.

III

We now turn to consider Mesquiti's contention that the district court reversibly erred in denying a continuance.  The Government argues that Mesquiti never requested a continuance and thus that we should review this claim by Mesquiti for plain error.  Mesquiti concedes that he did not expressly move for a continuance, but he contends that the district court should have construed his complaints about his inability to prepare for trial, expressed on the morning and afternoon of the first day of his trial, as a request for a continuance.  Thus, Mesquiti urges that we review this claim for abuse of discretion.  Because we conclude that Mesquiti fails to establish reversible

No. 16-50034

error even under the less demanding abuse-of-discretion standard, we need not determine the applicable standard of review.[3]

Trial judges have "broad discretion" in ruling on motions for a continuance. *United States v. Scott*, 48 F.3d 1389, 1393 (5th Cir. 1995). "In review, we evaluate each situation on a case-by-case basis and normally consider only the reasons for continuance presented to the trial judge." *Id.* (quoting *United States v. Cueto*, 611 F.2d 1056, 1060 (5th Cir. 1980)). To establish that denial of such a motion was an abuse of discretion, the appellant "must show that the denial resulted in 'specific and compelling or serious prejudice.'" *United States v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999) (some internal quotation marks omitted) (quoting *United States v. Krout*, 66 F.3d 1420, 1436 (5th Cir. 1995)).

Mesquiti notes that he had only three weeks between the hearing at which his counsel was dismissed from primary representation and the start of trial, and he contends that he therefore did not have adequate time for trial preparation. He emphasizes that during this three-week period, the Government filed its proposed jury instructions, witness list, and exhibit lists, as well as a notice of its intent to use evidence pursuant to Federal Rule of Evidence 404(b) and Federal Rule of Evidence 609, and he asserts that he needed additional time to respond to these filings. However, Mesquiti does not specifically indicate what response he could have given or how his lack of response prejudiced his defense. Next, he states that he needed additional

---

[3] Mesquiti makes no argument that we should review this issue de novo because the district court failed to recognize his motion and did not deny it in the exercise of discretion. *Cf., e.g.*, *FDIC v. Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993) (applying de novo review because district court denied equitable tolling as a matter of law rather than in exercise of discretion). Any such argument is therefore forfeited. *See, e.g.*, *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)) (issue not raised in party's opening brief is generally forfeited).

time to request jury instructions to support his defensive theory, but he did not indicate to the district court that he needed more time for this purpose, and we therefore do not consider this reason. *See Scott*, 48 F.3d at 1393. Moreover, Mesquiti does not state what jury instructions he would have requested or how their absence prejudiced his case.

Mesquiti also contends that he needed additional time to procure the attendance of defense witnesses. Yet, he does not indicate what witnesses he might have called or explain how their testimony would have aided his defense, and he therefore cannot establish prejudice on this basis. *United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir. 1991) ("In order for an appellant to show that a continuance was necessary to secure a witness, '[he] must show . . . that substantial favorable testimony would be tendered by the witness, that the witness [will be] available and willing to testify, and that the denial of a continuance would materially prejudice [him].'" (quoting *United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir. 1976))). Finally, Mesquiti notes that he had been held in segregation in the weeks leading up to his trial and asserts that, while in segregation, he lacked adequate resources to review the discovery. He further asserts that his receipt of discovery shortly before the start of trial was inadequate to protect his rights. However, here, too, Mesquiti does not specifically indicate how the late receipt of discovery prejudiced him, and, as the district court noted, Mesquiti's standby counsel had received the discovery provided by the Government well before trial, and Mesquiti could have reviewed the discovery with him.

Because Mesquiti fails to make the requisite showing of prejudice resulting from the denial of a continuance, he cannot establish an abuse of discretion by the district court. *See Barnett*, 197 F.3d at 144.

## IV

For these reasons, we AFFIRM the district court's judgment.