# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2015

Lyle W. Cayce
Clerk

No. 13-30016

JAMAHA ROBINSON,

Petitioner–Appellant

v.

STATE OF LOUISIANA,

Respondent–Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-749

Before PRADO, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

This is an appeal from a district court's decision denying habeas relief under 28 U.S.C. § 2254. Petitioner–Appellant Jamaha Robinson was convicted by a Louisiana jury of cocaine distribution. He asked to represent himself during his criminal trial. The judge did not warn Robinson about the dangers of proceeding to trial pro se before allowing Robinson to represent himself. For

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30016

instance, when Robinson told the judge that he did not understand the rules of procedure and evidence, the judge replied: "Well, you better learn real quick." This Court granted a Certificate of Appealability (COA) on one question: whether Robinson "knowingly and intelligently waived his Sixth Amendment right to counsel." For the reasons that follow, we answer this question in the negative and reverse and remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Robinson pleaded not guilty to cocaine distribution and asked to represent himself at trial. The trial judge asked Robinson why he wanted to represent himself, and he replied: "Because I feel like I could explain to the jury my point better, my point of view." The court then asked Robinson if he understood that he had the right to an attorney at all stages in the proceedings, and he said he did.

In a colloquy about his competence, Robinson said that he had a tenth-grade high school education and had not obtained a GED. He said he was twenty years old and unemployed, though he had once worked as a "carpenter helper" for his uncle. Robinson informed the court that he was able to read, write, and speak English. The court ordered appointed counsel, Mr. Beebe, to remain in the courtroom as Robinson's standby counsel. The court told Robinson he could choose to be heard by a judge or a jury, and he selected a jury trial.

Robinson then gave the court reason to doubt his understanding of the dangers of representing himself. The judge said: "I'm expecting you to proceed just as if you were a lawyer with the Rules of Evidence that the State of Louisiana requires all attorneys to abide by. Do you understand that?" Robinson said: "No sir." The judge replied: "Well, you better learn real quick

2

because you're going to be expected to follow the rules of court. Do you understand that?" This time, Robinson said yes.

The judge again asked Robinson whether he was sure he did not want the assistance of appointed counsel: "Mr. Robinson, I want to make sure again we are clear, you do not want the help of Mr. Beebe, am I right on that?" Once again, Robinson gave the court reason to doubt he fully understood the consequences of his decision to waive trial counsel. "I need help," he said, "but I got a lot of questions I want to ask myself." After the court asked for clarification, Robinson tried to explain himself. The judge and Robinson struggled to understand each other:

| | |
|---|---|
| ROBINSON: | I'm saying, hey, I could use him to represent me, but you know what I'm saying, my life is – |
| THE COURT: | No, I don't know what you're saying; that's why I'm asking you. |
| ROBINSON: | I'm telling you right now, my life is – you know what I'm saying – |
| THE COURT: | No, I don't know what you're saying; that's why I need you to say what you – |
| ROBINSON: | I have a lot of questions to ask myself. |
| THE COURT: | You want to ask some questions to yourself? |
| ROBINSON: | No, ask some questions myself to the – |
| THE COURT: | Well, you can ask any questions that you want to yourself; we don't know the – |
| ROBINSON: | – the [confidential informant] and the agent. |
| THE COURT: | I'm sorry. |
| ROBINSON: | I got a lot of questions I want to ask the [confidential informant] and the agent. |
| THE COURT: | Okay, all right. Are you ready to proceed? |

No. 13-30016

Robinson told the judge he was ready, so the judge said, "Well, then let's commence the jury selection process." This entire colloquy is memorialized in only nine pages of trial transcript.

At this point, court-appointed counsel interrupted: "Your Honor, before you [commence the jury-selection process], I'd like the record to reflect that I have attempted to meet with Mr. Robinson . . . on two occasions. He first advised me September 29th of this year that he wanted to represent himself in this matter." Court-appointed counsel then said: "I advised him that the pretrial offer was in his best interest. I also advised him that it is better to proceed with an attorney in this matter, and he has chosen, of his own volition, to represent himself in this matter."

The judge asked Robinson if he had "anything to add or subtract from that?" Robinson said he did not, and jury selection started.

The jury ultimately found Robinson guilty of cocaine distribution, and he was sentenced to ten years' imprisonment. He was then resentenced as a habitual offender to fourteen years' imprisonment.

Robinson directly appealed to the Louisiana First Circuit Court of Appeal, filing a counsel brief and a pro se brief that asserted several claims not pertinent to this appeal. The appellate court affirmed his conviction, and the Louisiana Supreme Court denied his application for discretionary review.

## A.    State Postconviction Proceedings

Robinson then filed a pro se application for postconviction relief in Louisiana trial court that pertains to this appeal. Robinson asserted two claims for postconviction relief that were not raised on direct appeal in either Robinson's counsel brief or his pro se brief: (1) that the jury was biased and (2) that the trial court allowed Robinson to represent himself without a

knowing and intelligent waiver of his right to counsel—the issue on which a COA was granted in this case.

The state trial court denied Robinson's application for postconviction habeas relief. The court did not address Robinson's juror-bias claim for relief but did handwrite the following text in the margin: "DENIED - Although defendant conducted his own defense appointed counsel was present during the proceedings. The issue of representation was not raised on appeal by appointed defense counsel."

The intermediate state appellate court and state supreme court denied Robinson's timely writ applications without stated reasons. Robinson then filed the instant pro se application for federal habeas relief in federal district court.

## B.    Federal Habeas Proceedings

The district court adopted in full the magistrate judge's recommendation that Robinson's habeas petition be denied on the merits. "The record is clear," the magistrate judge concluded, "that the trial court was convinced that Robinson knowingly and intelligently waived his right to counsel and that he desired and was able to represent himself. This is all that was required to meet constitutional standards regarding the waiver." The district court appears to have been persuaded by the presence of standby counsel and by appointed counsel's representation that he had told Robinson it is "better to proceed with an attorney."

In addition to the colloquy reproduced above,[1] the district court pointed to five other occasions during the two-day trial in which the judge also "addressed this issue with Robinson." Review of the referenced portions of the

---

[1] *See supra* Part I.

transcript reveals that, in each instance, the trial judge simply asked Robinson whether he still wanted to proceed pro se.[2]

In the last portion of the transcript that the district court cited, Robinson initially indicated he wanted counsel to help with his closing argument:

| | |
|---|---|
| THE COURT: | Okay. Now one more time, just so the record will be clear, Mr. Robinson, would you like Mr. Beebe to give your closing statement? |
| ROBINSON: | Yes, sir. |
| THE COURT: | Huh[?] |
| . . . | |
| MR. BEEBE: | I'm uncomfortable giving a closing argument, because [Robinson] has presented the case in a much different fashion – |
| ROBINSON: | I'm going to give the closing argument. |
| MR. BEEBE: | – than I would. |
| THE COURT: | All right. |

After this exchange, the court heard closing arguments from the government and Robinson.

Robinson timely appealed, and we granted his application for a COA.

## II.    DISCUSSION

This Court has jurisdiction to review a district court's decision denying habeas relief under 28 U.S.C. § 2253(a), provided that a circuit judge grants a certificate of appealability first, § 2253(c). We granted a COA on one issue: whether Robinson "knowingly and intelligently waived his Sixth Amendment

---

[2] On the first occasion, the judge asked Robinson: "Now, would you like Mr. Beebe to represent you? He's available to you." Later, the judge said: "And once again, Mr. Robinson, I want to ask you if you want to represent yourself, or if you want Mr. Beebe to speak for you today, to represent you today." The judge also later asked: "Now you do understand that . . . you have the right to have the lawyer do the questioning for you. But you're choosing to represent yourself; am I correct?"

right to counsel." "In an appeal of the district court's denial of habeas relief, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standard of review that the district court applied to the state court decision." *Roberts v. Thaler*, 681 F.3d 597, 603 (5th Cir. 2012) (citations and internal quotation marks omitted).

As an initial matter, we must determine the appropriate standard of review. We then turn to the merits of Robinson's habeas claim under the applicable legal standard.

## A.    Standard of Review

We must first decide whether Robinson's trial-counsel-waiver claim was "adjudicated on the merits" in state court within the meaning of § 2254. If so, we defer to the state court's decision under § 2254(d). By contrast, "[f]or claims that are not adjudicated on the merits in the state court," we do not apply the deferential scheme laid out under § 2254(d) and instead "apply a *de novo* standard of review." *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). To determine whether the state court adjudicated the merits of a federal claim, we look to the "last reasoned state-court opinion." *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

In this case, the last state court decision of any substance was the state trial court's decision denying Robinson's postconviction habeas application, so we begin there.

The state court's decision denying Robinson's application for postconviction relief is ambiguous in its reasoning. The state trial court handwrote "DENIED" across the petition and then handwrote the following text in the margin: "DENIED - Although defendant conducted his own defense appointed counsel was present during the proceedings. The issue of representation was not raised on appeal by appointed defense counsel." The

Louisiana intermediate court of appeals' and supreme court's decisions do not clarify the matter, as these courts denied Robinson's applications for supervisory and discretionary writs by letter order without explanation. Accordingly, we must decide whether this ambiguous state-court decision constitutes an adjudication of Robinson's federal claim on the merits or a procedural disposition.

The Supreme Court clarified in *Harrington v. Richter* that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 131 S. Ct. 770, 784–85 (2011). "The *Richter* presumption applies even where the habeas petitioner raises a federal claim and the 'state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question.'" *Woodfox v. Cain* (*Woodfox II*), 772 F.3d 358, 370 (5th Cir. 2014) (quoting *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013)). "But the 'presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely.'" *Id.* (quoting *Richter*, 131 S. Ct. at785

The Fifth Circuit has "adopted a three-part test when it is unclear whether a state court's opinion[] adjudicates a claim on the merits." *Id.* " at 371; *accord Barrientes  v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000). This inquiry "is akin to asking whether the state court decision was 'substantive or procedural.'" *Woodfox v. Cain* (*Woodfox I*), 609 F.3d 774, 794 (5th Cir. 2010) (quoting *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999)). We consider the following three factors:

(1)    what the state courts have done in similar cases;

(2)    whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and

(3)    whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.

*Woodfox I*, 609 F.3d at 796 (quoting *Mercadel*, 179 F.3d at 274) (internal quotation marks omitted); *accord Woodfox II*, 772 F.3d at 371.[3]

Our cases applying this three-factor test have concluded that all three factors need not weigh in favor of a procedural disposition to hold that a claim has not been adjudicated on the merits within the meaning of § 2254. *Gallow v. Cooper*, 505 F. App'x 285, 290 (5th Cir. 2012) (per curiam) (citing *Mercadel*, 179 F.3d at 274). For example, in *Mercadel*, the petitioner filed his application for postconviction relief to the wrong court—directly to the Louisiana Supreme Court instead of to the convicting district court. 179 F.3d at 274. We noted that the Louisiana Supreme Court "consistently refused to consider the merits" in these circumstances,  and that Mercadel's petition was denied in a one-word order silent as to the reason. *Id.* Applying the three-factor test, we reasoned that the Louisiana Supreme Court's one word denial of postconviction relief

---

[3] We note that this situation—unclear and ambiguous conflicting statements by the state court—is different from the ordinary circumstance in which the state court denies or dismisses a habeas petition without explanation. As noted, unexplained state-court decisions typically warrant the deferential standard of review under § 2254(d). *Richter*, 131 S. Ct. at 784–85 (citing *Ylst*, 501 U.S. at 803); *accord Hoffman*, 752 F.3d at 438–39 (applying the *Richter* presumption to an unexplained state-court decision denying a habeas petition). By contrast, we apply a three-part test to evaluate a state court decision with an unclear explanation. *Compare* Brian R. Means, *Federal Habeas Manual* § 3:9 "Unexplained state court decisions" (2014) ("Where a state court's decision is unaccompanied by an explanation, . . . it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." (quoting *Richter*, 131 S. Ct. 770, 784–85 (2011)) (internal quotation marks omitted)), *with id.* § 3:13 "Ambiguous state court opinions" (noting that, when a state court gives reasons for its denial of a habeas petition, federal courts must ascertain "whether the state court's disposition of a petitioner's federal claim was on the merits" and listing the various factors that courts have considered).

No. 13-30016

indicated that the third factor favored a merits adjudication, but the first and second factors "weigh[ed] heavily in favor of . . . treating the state-court denial as a procedural decision," so we applied de novo review. *Id.*; *accord Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) (concluding habeas claim's "adjudication was not 'on the merits' within the intendment of the AEDPA" even though the "third factor weighs in favor of the conclusion that the state court disposition was on the merits."). In other words, two of the three factors favoring a procedural disposition are enough.

With these principles in mind, we turn now to the first factor.

### 1. *What Louisiana Courts Have Done in Similar Cases*

The first factor weighs in favor of concluding Robinson's Sixth Amendment claim received a procedural disposition because Louisiana courts routinely dismiss similar claims for postconviction relief as waived. Louisiana courts typically bar defendants from asserting, for the first time on collateral review, claims that were not raised on direct appeal. *E.g.*, *State v. Greco*, 2003-0709, at **18 (La. App. 4 Cir. 12/17/03); 862 So. 2d 1152, 1164 (La. Ct. App. 2003) (reversing trial court for granting postconviction relief because "any claim is barred by [La. Code Crim. Proc.] art. 930.4 because the defendant failed to raise the issue on [direct] appeal"), *writ denied*, 2004-0365 (La. 9/24/04); 882 So. 2d 1164; *State v. Woodberry*, 2002-0994, at **4 (La. App. 4 Cir. 6/5/02); 820 So. 2d 638, 642 (La. Ct. App. 2002), *writ denied*, 2002-1856 (La. 3/21/03); 840 So. 2d 544; *State v. Gaines*, 97-1327, at **9 (La. App. 4 Cir. 9/17/97); 701 So. 2d 688, 694 (La. Ct. App. 1997) ("Relator's claim is procedurally barred because it was not raised on appeal"), *writ denied sub nom. State ex rel. Gaines v. State*, 97-2610 (La. 4/24/98); 717 So. 2d 1160. The first factor favors a procedural disposition.

### 2. *The History of This Case*

No. 13-30016

Turning to the second factor, the history of this case indicates that the state court was aware of a ground—specifically, waiver—for not adjudicating Robinson's habeas application on the merits. Two facts inexorably lead to this conclusion: (1) Robinson did not raise his Sixth Amendment claim on direct appeal, and (2) the state habeas court was clearly aware of this because it mentioned waiver in its order denying Robinson's application for postconviction relief.

Fifth Circuit cases applying the second factor demonstrate that we may infer a state court's awareness of a procedural ground from the circumstances. For instance, in *Mercadel*, we inferred that the Louisiana Supreme Court was aware of a procedural defect from the obviousness of the error. 179 F.3d at 275. Similarly, in *Jackson*, we concluded that, because there was no objection in the trial record to the prosecutor's allegedly improper comments, the history of the case suggested that the state court found the prosecutorial-misconduct claim had been waived and not adjudicated on the merits. 194 F.3d at 651.

As in *Jackson* and *Mercadel*, the record supports the inference that the Louisiana courts found Robinson's trial-counsel-waiver claim to have been waived because he did not raise this issue on direct appeal. Robinson did not raise the trial-counsel-waiver issue on direct appeal. Robinson's appointed appellate counsel did not assert Robinson's Sixth Amendment trial-counsel-waiver claim in Robinson's brief on direct appeal. Robinson also filed a pro se brief in which he did not assert a Sixth Amendment waiver claim either.[4]   The

---

[4] *See State v. Robinson*, 2009-0713, at *1 (La. App. 1 Cir. 9/11/09), 2009 WL 3162234 (unpublished) ("A counseled brief filed on [Robinson's] behalf argues only that the evidence was insufficient to support his conviction. Defendant has also filed a pro se brief arguing he was deprived of his right to a fair trial when the trial court allowed the inconsistent testimony of an agent and the confidential informant regarding who performed the search of the confidential informant; and that his arrest and conviction were illegal as a result of the

state postconviction court was aware of these omissions. In denying Robinson's application, the court wrote: "The issue of representation was not raised on appeal by appointed counsel." This is direct evidence that the state court was aware of a procedural ground for not adjudicating the merits.

Thus, the second factor favors concluding that the state court disposed of Robinson's application on procedural grounds.

### 3.  *The Louisiana Court's Opinion*

Finally, the third factor—the state-court opinion—does not weigh in favor of either a procedural or a merits adjudication. As discussed above, the last reasoned state-court decision gives some indication that the court relied on Louisiana's waiver rule, Louisiana Code of Criminal Procedure article 930.4. After all, the court expressly stated: "The issue of representation was not raised on appeal by appointed counsel." *Cf. Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) ("A review of the opinion rendered by the Texas Court of Appeals in this case clearly reveals that the state court did not adjudicate the merits of Fisher's *Batson*-religion claim. The state court explicitly decided the religion issue on waiver grounds . . . ."). On the other hand, the court also noted that, "[a]lthough the defendant conducted his own defense appointed counsel was present during the proceedings." This sentence suggests a merits adjudication. These sentences appear at odds with one another. In light of this ambiguity, the third factor does not bear on our analysis. *See Mercadel*, 179 F.3d at 274 (noting that the "third *Green* factor does not come into play in this case" because the state court decision does not indicate one way or another whether the federal claim was adjudicated on the merits or disposed of on procedural grounds).

confidential informant's negotiation with the State to testify against defendant in exchange for favorable consideration.").

### *4. Analysis*

Because two of the three *Mercadel* and *Woodfox* factors favor a procedural disposition, we conclude that Robinson's Sixth Amendment claim was not adjudicated on the merits within the meaning of § 2254. The first two factors weigh in favor of finding that Robinson's Sixth Amendment claim was disposed of on procedural grounds, and the third factor does not weigh in either direction.

We reached a similar conclusion in *Jackson*. There, we evaluated a one-sentence Texas Court of Criminal Appeals (CCA) order denying habeas relief. Unlike in this case, we noted that because of the CCA's failure to mention procedural grounds, the third factor weighed in favor of a merits adjudication. *Jackson*, 194 F.3d at 651–52. Nonetheless, because the other two factors favored a procedural disposition under Texas's waiver rule, we evaluated the claim de novo. *Id.*

The record in this case differs in important ways from other cases in which we have held that a state court adjudicated a federal claim on the merits within the meaning of § 2254. For instance, in *Woodfox I*, we evaluated a similarly cryptic Louisiana court order denying postconviction relief. 609 F.3d at 796–97. We observed that because the state filed a brief opposing postconviction relief in which it pressed only merits arguments, the second factor (the history of the case) supported a merits adjudication. *Id.* Under the third factor, we noted that the state court specifically stated the petitioner's "allegations are *without merit.*" *Id.* at 797. Accordingly, because two of the three factors favored concluding that there had been a merits adjudication, we applied § 2254, explaining there was "simply no indication in the state court adjudication that suggests a reliance on any procedural vehicle rather than the merits to deny relief." *Id.* In stark contrast here, the state did not file an

opposition to Robinson's application for postconviction relief in which it argued the merits. And unlike the state court order in *Woodfox I*, which stated the "allegations are *without merit*," here, the state court specifically mentioned a procedural vehicle to deny relief—that Robinson failed to raise his trial-counsel-waiver claim on direct appeal. *Cf. Barrientes*, 221 F.3d at 779 ("[T]he Texas Court of Criminal Appeals was not put on notice by the State that this claim was waived. Our inquiry under this factor [therefore] weighs in favor of concluding that the claim was adjudicated on the merits.").

Therefore, the procedural defect in Robinson's application for postconviction relief—together with the history of case and the statement by the state court indicating it was aware that Robinson had failed to raise this issue on direct appeal—leads us to the conclusion that the state court denied relief on procedural grounds. Thus, we proceed to analyze the merits de novo.

### 5. The Dissent

We pause briefly to address the dissent. The dissent essentially disagrees with us on two related issues pertaining to the standard of review. First, the dissent would apply the *Richter* presumption and conclude that § 2254(d)'s deferential standard of review applies without regard to the three-factor test we applied in *Mercadel* and, more recently, in *Woodfox II*. *Post* at 23–26. Second, the dissent suggests that, even if the state court did not consider the merits of Robinson's federal habeas claim, we should consider sua sponte applying the procedural bar to deny his pro se petition for federal habeas relief. *Post* at 28–30.[5]

---

[5] The dissent reads the district court's brief statement as stating alternative holdings: one procedural and one on the merits. *Post* at 2–3. For the reasons stated in our discussion of the *Mercadel* and *Woodfox II* factors above, we do not read the state court's opinion this way, and we find the dissent's logic to be circular. As the Second Circuit explained in *Jimenez*

No. 13-30016

The dissent's first point appears to proceed from the following premise: If the parties agree, forfeit, waive, or concede that a federal habeas claim was adjudicated on the merits, then they have not rebutted the *Richter* presumption, and we should apply § 2254(d) without examining the record for ourselves.[6] We disagree. This Court, and "not the parties," "must determine the appropriate standard of review." *United States v. Torres–Perez*, ___ F.3d ___, at ___, 2015 WL 394105, at \*1 (5th Cir. Jan. 29, 2015) (citing *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc)). Similarly, in a recent death-penalty case, the parties agreed that the habeas petitioner had procedurally defaulted; we nonetheless evaluated the record for ourselves and held that the claim had been adjudicated on the merits within the meaning of § 2254(d). *Ward v. Stephens*, 777 F.3d 250, 257–59 & n.3 (5th Cir. 2015). We explained that we were "obligated to decide whether . . . § 2254's deferential

---

*v. Walker*, 458 F.3d 130 (2d Cir. 2006), federal courts apply the three-factor test *at the outset* to answer the question the dissent assumes the answer to—whether: (1) the state court's decision rested on federal grounds, (2) the state court's decision rested on primarily state grounds, or (3) the state court's decision rested on "interwoven" or alternative federal merits and state procedural grounds. *See id.* at 145 & n.16 ("To reiterate, the three clues to the basis of a state court's decision are (1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances."). As *Jimenez* makes clear, federal courts apply the presumption from *Harris v. Reed*, 489 U.S. 255 (1989) only *after* they first apply three factors to determine the basis of the state court's decision and only if, on that basis, the state court's decision falls into the third category. Rather than assuming the answer to this threshold question, we apply the Fifth Circuit's three-factor test and conclude that the state court's decision in this case "fairly appear[s] to rest primarily on state procedural law." *See Jimenez*, 458 F.3d at 145. Thus, we do not disagree with the dissent's point that, if the state court's decision rested on alternative procedural and merits grounds, then AEDPA deference would apply—indeed, this point is not controversial. *See Post* at 3 n.1 (collecting cases). Rather, we disagree with the dissent's premise that the state court's decision rested on alternative grounds; instead, we apply our obligatory three-factor test to conclude the state court's decision rested on primarily state procedural grounds.

[6] *See Post* at 1 ("The parties have assumed throughout this habeas case that Robinson's claims . . . were adjudicated on the merits," and, "[b]efore the district court and our court, the parties briefed only the merits.").

15

standard of review applies, regardless of the parties' positions on the matter." *Id.*[7] We see no reason to depart from this fundamental principle of appellate review in this case. Accordingly, we follow *Ylst*'s instruction to look through the unexplained orders to the last reasoned state-court decision to assess its resolution of Robinson's claim—even if, due to inadvertence or a pro se petitioner's ignorance, the district court neglected to do so.

The dissent reads *Woodfox II* and *Hoffman* to support its position that the standard of review has been in effect waived by Robinson; we read these cases as cutting against this position. In *Woodfox II*, even though the law of the case applied, we still applied our three-part test to evaluate the state-court record and independently assess whether the last reasoned decision constituted an adjudication on the merits. 772 F.3d at 369–72. *Hoffman* is not to the contrary. There, the last reasoned state-court decision "did not expressly address the claim that trial counsel were ineffective," so we applied the *Richter/Johnson* presumption and held that § 2254(d) applied. *Hoffman*, 752 F.3d at 430. As explained above, unlike Robinson's federal claims that the state habeas court did not address—claims on which we denied COA (applying the *Richter/Johnson* presumption)—here, the state court issued a reasoned explanation for why a Louisiana procedural rule precluded it from considering Robinson's trial-counsel-waiver claim. Thus, *Hoffman* is inapposite.[8] The dissent's unsupported assertion that the "distinction" between a silent state-

---

[7] We note that the contrary rule would apply AEDPA in a situation Congress did not intend and would be inconsistent with the practice in other circuits. *See, e.g.*, *Brown v. Smith*, 551 F.3d 424, 428 & n.2 (6th Cir. 2008) (applying de novo review after concluding that "[t]he district court erred in presuming that AEDPA's deferential standard applied to this case" reasoning that, even though the petitioner did not raise this issue, "a party cannot 'waive' the proper standard of review by failing to argue it").

[8] *See supra* note 3 and accompanying text.

court opinion and an ambiguous one "makes no difference," *Post* at 7, is contrary to our case law. As discussed above, federal courts routinely apply two different doctrinal lines of cases to these distinct scenarios, and in the Fifth Circuit, we apply a three-factor test to ambiguous opinions.[9]

We also disagree with the dissent's invitation to apply the procedural bar sua sponte. The dissent agrees that procedural default constitutes a nonjurisdictional affirmative defense that the State has forfeited in this case. *Post* at 7. Indeed, the Supreme Court has said that "procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" *Trest v. Cain*, 522 U.S. 87, 89 (1997) (alteration in original) (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996)). But the dissent nonetheless suggests we should apply the default to bar the petitioner's claim. *Post* at 6–8.

We decline to do so for two reasons. First, the Supreme Court has declined to approve the practice of circuits sua sponte raising procedural bars. *See Trest*, 522 U.S. at 90 ("Louisiana . . . would like us to go beyond the question presented and hold that the law permitted (though it did not require) the Fifth Circuit to raise the procedural default sua sponte. . . . [W]e do not believe this is an appropriate case in which to examine that question . . . ."). On the contrary, the Supreme Court has specifically held that "[a] court of appeals is not 'required' to raise the issue of procedural default sua sponte." *Id.* at 89.[10]

---

[9] *See supra* note 3 and accompanying text.

[10] The Supreme Court has approved federal habeas courts that have sua sponte raised equitable defenses, such as exhaustion (i.e., fairly presenting a claim to the state courts), *see, e.g.*, *Wood v. Milyard*, 132 S. Ct. 1826, 1836 (2012) (noting that these equitable "judicially created defenses [are] rooted in concerns of comity and finality that arise when federal courts collaterally review state criminal convictions"), but the Court has not yet approved sua sponte invocation of state procedural bars by federal habeas courts against petitioners who availed themselves fully of state-court remedies. Such procedural bars do not implicate the same

Second, assuming we were permitted to sua sponte assert the procedural default on behalf of the State, we would decline to do so against this pro se petitioner whose claim implicates his Sixth Amendment right to counsel, a claim that he fairly presented to the state court and that, for the reasons stated, has never been actually adjudicated on the merits by any tribunal.[11]

## B.    Robinson's Sixth Amendment Claim

The Sixth Amendment guarantees the right of the accused "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In *Faretta v. California*, the Supreme Court recognized that the Sixth Amendment also guarantees the accused the right to proceed without counsel if he "knowingly and intelligently" elects to do so. 422 U.S. 806, 807, 835 (1975). The Court explained that, because an accused proceeding pro se "relinquishes . . . many of the traditional benefits associated with the right to counsel," the trial judge must ensure the accused makes this choice "'with eyes open.'" *Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)) The *Faretta* Court emphasized that an accused "should be made aware of the dangers and disadvantages of self-representation." *Id.* It held that the defendant had knowingly and intelligently refused counsel: "The record affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Id.* The Court also noted that the "trial judge had warned [the defendant] that

---

comity concerns as, for instance, the requirement that a federal habeas petitioner first fairly present his claims to state courts. *Cf. Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) ("The bar imposed by [Louisiana Code of Criminal Procedure] article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits.").

[11] The dissent also suggests supplemental briefing is an option. *Post* at 8 & n.5. We cannot see how supplemental briefing would permit the State to reanimate a forfeited nonjurisdictional affirmative defense, rather than simply invite wasted effort and expense for the State of Louisiana.

he thought it was a mistake not to accept the assistance of counsel." *Id.* at 835–36.

### 1. The Parties' Arguments

Robinson argues "the trial court failed to warn [him] of the dangers and perils of self-representation" in violation of the Sixth Amendment. Robinson points out that "at no point" did the judge "urge Mr. Robinson not to represent himself." As for the district court's reliance on appointed counsel's representation to the court that he had "advised [Robinson] it is better to proceed with an attorney," Robinson makes two points. First, Robinson argues "the Fifth Circuit has specifically rejected warnings given by counsel rather than the court," referring to *United States v. Davis*, 269 F.3d 514, 518–19 (5th Cir. 2001). Second, Robinson argues appointed counsel's "warning was too general for a knowing and voluntarily waiver, even if it had been given by the trial court," referring to *United States v. Jones*, 421 F.3d 359, 362 (5th Cir. 2005).

The State of Louisiana counters by asserting that "the trial court satisfactorily advised Robinson of the obstacles he would face representing himself . . . ." The State argues that, before the trial court accepted Robinson's waiver of counsel, the judge "discussed his choice with Robinson." Robinson, the State argues, "understood that he could choose a jury or a judge trial and he selected a jury trial." He also "understood that the court could not advise him of the law," the State continues, and the trial judge "repeatedly warned Robinson that he would be expected to follow the rules of procedure." The State concedes that "a 'stand-by' attorney does not qualify as assistance of counsel mandated by the Sixth Amendment," but it argues the presence of standby counsel "should be considered as a factor in determining whether Robinson received a fair trial." The State neglects to cite authority for this proposition.

### 2. *Analysis*

We have held that "the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991). The Fifth Circuit has also interpreted the Supreme Court's decisions to require that the trial judge must be the one to warn the accused about the dangers of proceeding to trial without the assistance of counsel. In *Davis*, the trial court did not so warn the accused, and instead relied on counsel's warning to the defendant "that [counsel] d[id] not believe it [was] in [the defendant's] best interest . . . to participate in the trial" without the assistance of counsel. 269 F.3d at 517 & n.1. The trial court allowed the defendant, on his own, to cross-examine nine government witnesses and examine two defense witnesses. *Id.* at 517. Appointed counsel handled the rest of the defense, including opening and closing statements. *See id.*

The jury found the defendant guilty, and we vacated the conviction and remanded for a new trial. *Id.* at 516–17. We emphasized that it is the judge's obligation "to warn [defendants] of the perils and disadvantages of self-representation," and we concluded that "[t]he district court failed to discharge this responsibility." *Id.* at 520. "The [district] court's reliance on the warnings against self-representation given by [the defendant's] counsel . . . was not sufficient," we explained. *Id.*

Here, the trial court's reliance on standby counsel's representations was insufficient to establish a knowing and intelligent waiver of Robinson's right to counsel as a matter of law under Fifth Circuit precedent.[12] At no point did

---

[12] The dissent takes issue with our invocation of circuit precedent in the habeas context, explaining that this "reliance is improper *given that AEDPA applies*." *Post* at 5 n.3 (emphasis added). For the reasons stated *supra* Part II(A), we do not take it as a "given" that

No. 13-30016

the trial judge specifically warn Robinson of the dangers of proceeding pro se. *Cf. Iowa v. Tovar*, 541 U.S. 77, 88–89 (2004) ("[The defendant] must be warned specifically of the hazards ahead."). Instead, the trial court appears to have relied on standby counsel's representations that he had previously "advised [Robinson] that it is better to proceed with an attorney in this matter." Under *Davis*, this is insufficient. *See* 269 F.3d at 519.  Moreover, even assuming arguendo the trial judge himself advised Robinson that it was "better to proceed with an attorney," this generic warning would also be insufficient to establish a knowing and intelligent waiver. *See Jones*, 421 F.3d at 364 (vacating the defendant's criminal conviction where "the district court recommended to [the defendant] that he have an attorney and stated that his appointed counsel was highly qualified" because "the district court took no steps, *except in the most general way*, to insure that Jones was 'aware of the dangers and disadvantages of self-representation'" (emphasis added) (quoting *United States v. Joseph*, 333 F.3d 587, 590 (5th Cir. 2003))).

The district court and the State point to the fact that, "[o]n no less than five occasions before and during the trial, the trial court . . . ensured that [Robinson] still wanted to proceed without the assistance of counsel." This portion of the record establishes that Robinson *voluntarily* and competently waived his right to counsel, but it does not show that this waiver was "knowing" and "intelligent" as required under the Sixth Amendment. *See Faretta*, 422 U.S. at 835 ("[T]he accused must 'knowingly and intelligently forgo'" the "traditional benefits associated with the right to counsel." (citation omitted)).

---

AEDPA applies, and we instead confront the important threshold question whether Robinson's trial-counsel-merits claim was adjudicated on the merits within the meaning of § 2254(d). It is only because we first conclude that his claim was not adjudicated on the merits, as a threshold matter, *supra* Part II(A), that we are then guided by Fifth Circuit case law interpreting the Sixth Amendment's constitutional protections.

21

That the judge repeatedly confronted Robinson with the choice to be represented by counsel is not enough. The question is not whether the defendant *voluntarily* chose to represent himself; the "question is whether his decision was understandingly and intelligently made: that is, did he make this choice 'with eyes open.'" *Maynard v. Meachum*, 545 F.2d 273, 278–79 (1st Cir. 1976) (quoting *Adams*, 317 U.S. at 279) (remanding habeas petition).

Robinson's statements indicated that he did not understand the dangers of proceeding to trial without counsel. The judge told Robinson that he expected Robinson "to proceed just as if [he] were a lawyer with the Rules of Evidence that the State of Louisiana requires all attorneys to abide by. Do you understand that?" Robinson replied: "No sir." The judge responded: "Well, you better learn real quick because you're going to be expected to follow the rules of court." This dialogue does not establish that Robinson knew "what he [was] doing and [made] his choice . . . with eyes open." *Adams*, 317 U.S. at 279.

Therefore, we hold that Robinson did not knowingly and intelligently waive his right to trial counsel.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment denying habeas relief and REMAND this case to that court with instructions to order the State of Louisiana to either provide Jamaha Robinson a new trial or release him from custody within 180 days of the date of the district court's order on remand.

No. 13-30016

JENNIFER WALKER ELROD, Circuit Judge, dissenting.

Following the Supreme Court's guidance in *Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011), I would hold that the state habeas court adjudicated Robinson's claim on the merits and would apply AEDPA deference to deny relief, as the state habeas court's determination was neither "contrary to, [n]or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). In the alternative, if the majority opinion is correct that the state habeas court denied Robinson's claim because of a procedural default, we should address whether that same default bars his federal petition. Accordingly, I dissent.

**I.**

The parties have assumed throughout this habeas case that Robinson's claims would be, and were, adjudicated on the merits. Neither party briefed the procedural default issue before the state habeas court, and, upon denying relief, the state habeas court handwrote the following in its order:

> Although the defendant conducted his own defense, appointed counsel was present during the proceedings. The issue of representation was not raised on appeal by appointed defense counsel.

Despite the order's arguable ambiguity, this handwritten explanation refers to both a merits and a procedural adjudication of Robinson's Sixth Amendment claim. Indeed, throughout all of the proceedings, the parties treated this order as adjudicating Robinson's claim on the merits. Before the district court and our court, the parties briefed only the merits. They did not mention the possibility that the state court adjudicated Robinson's claim under a procedural bar, nor did they discuss the standard that our court would use to determine whether his claim was adjudicated under a procedural bar.

The district court, adopting the magistrate judge's report and recommendation, also did not address whether the state court may have adjudicated Robinson's claim under a procedural bar. The district court determined that AEDPA applied to Robinson's petition, analyzed the merits of his Sixth Amendment claim under AEPDA's deferential standard of review, and denied relief.

Astonishingly, the majority opinion *sua sponte* raises the procedural bar issue for the first time on appeal and then incorrectly applies our three-part test used in *Woodfox v. Cain*, 772 F.3d 358, 371 (5th Cir. 2014), to determine that the state habeas court rested its decision on a procedural bar. In so doing, the majority opinion ignores the presumption we are required to apply and misapplies the leading cases in our circuit on this issue.

Following Supreme Court precedent, we must presume a merits adjudication in three contexts. *Harris v. Reed* requires us to presume a merits adjudication where the basis of a state court's order denying a federal claim is ambiguous. 489 U.S. 255, 263 (1989) (requiring the state court to "clearly and expressly" state that it relied on a procedural bar) (internal quotation marks omitted). *Richter* instructs that "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied . . . [the reviewing court] may[] presume[] that the state court adjudicated the claim on the merits . . . ." 131 S. Ct. at 784–85 (citing *Harris*, 489 U.S. at 265); *accord Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011) ("[AEDPA deference] applies even where there has been a summary denial."). And, in *Johnson v. Williams*, the Supreme Court extended the *Richter* presumption to cases in which the state habeas court addresses only some of a petitioner's claims in its denial order without addressing the federal claim in question. 133 S. Ct. 1088, 1091 (2013) ("[T]he federal habeas court *must*

24

No. 13-30016

presume (subject to rebuttal) that the federal claim was adjudicated on the merits.") (emphasis added).

Given that the order in this case refers to both merits-based and procedural reasons for denying relief, I would conclude that AEDPA deference applies. Where an order is ambiguous as to its reasons, *Harris* and *Richter* require us to presume a merits-based adjudication,[1] and the parties bear the burden of rebutting that presumption by demonstrating that the state habeas court rested its decision on some other ground. *Woodfox*, 772 F.3d at 370–71. As explained in *Woodfox*, we apply a three-part test to determine whether a party has met his burden. *Id.* at 371. However, where the parties do not brief the presumption at all or discuss which grounds the state habeas court relied upon to deny relief, they cannot overcome it. *Hoffman v. Cain*, 752 F.3d 430, 436, 439 (5th Cir. 2014).

In *Hoffman*, we observed that the presumption could be rebutted by the petitioner "'for the purpose of showing the claim should be considered . . . de novo,'" or by the state "'for the purpose of showing that the federal claim . . . [w]as procedurally defaulted.'" 752 F.3d at 439 (quoting *Johnson*, 133 S. Ct. at 1096). But, because neither party briefed the issue, we held, in light of the presumption, that the state habeas court adjudicated the petitioner's claim on the merits, and we then applied AEDPA deference to our merits analysis. The

---

[1] Alternatively, if the order is not ambiguous but instead indicates that the state habeas court relied on both grounds, AEDPA deference would still apply on federal review. *Busby v. Dretke*, 359 F.3d 708, 721 n.14 (5th Cir. 2004) ("[I]nvok[ing] a procedural bar as an *alternative* basis to deny relief does not deprive the state of the benefit of AEDPA's deferential standard." (emphasis added)). A majority of the other circuits have similarly held. *See* Brian R. Means, *Federal Habeas Manual* § 3:19; *see, e.g.*, *Rolan v. Coleman*, 680 F.3d 311, 319 (3d Cir. 2012); *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010), *cert. denied*, 2011 WL 743055 (U.S. 2011); *Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1073, 175 L. Ed. 2d 901 (2010); *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004); *Crawford v. Head*, 311 F.3d 1288, 1324 (11th Cir. 2002); *Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002).

majority opinion contends that *Hoffman* is "inapposite" because it involved a state court order that was silent as to the particular claim at issue rather than ambiguous. But this distinction makes no difference. Under *Ricther* and *Harris*, we must presume an adjudication on the merits in *both* scenarios. And, *Hoffman* holds that the parties cannot overcome that presumption if they never brief it or address the reasons why some other explanation is more likely. Because both Robinson and the state failed to brief the presumption in the instant case, we should hold, consistent with *Hoffman*, that the state habeas court's order was an adjudication on the merits.

Instead, the majority opinion *sua sponte* applies our three-part test despite the parties' failure to brief the issue. The majority opinion contends that regardless of the parties' briefing, we have an independent duty to apply our three-part test and determine the state court's basis for denying relief because we "must determine the appropriate standard of review." *Ante* at 15. I agree that we, not the parties, ultimately decide whether AEDPA deference applies, but the Supreme Court has told us precisely how we are to go about making that determination—we must presume a merits adjudication and the parties bear the burden of overcoming it.[2] If the majority opinion insists that we apply the three factors in this case to decide the basis of the state habeas court's order, we should first request supplemental briefing on the issue to give the parties a chance to rebut the presumption. *See infra* at 8. In light of

---

[2] The majority opinion pays lip service to *Richter*, noting that the presumption is overcome because there are sufficient reasons to the think a non-merits adjudication is more likely. But these reasons were never argued by either party. In addition, the handwritten order on its face suggests that the state habeas court rested its decision both on the merits and a procedural default—a situation in which we have held that "AEDPA deference is still applicable." *Woodfox v. Cain*, 609 F.3d 774, 795 n.7 (5th Cir. 2010).

*Richter*, *Harris*, and *Hoffman*, I believe that the majority opinion's analysis is erroneous.

Applying AEDPA's deferential review, it is readily apparent that the state habeas court's decision was neither "contrary to, [n]or involved an unreasonable application of, clearly established" Supreme Court precedent.[3] 28 U.S.C. § 2254(d)(1). The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). It is enough "'if the defendant fully understands the nature of the right [to counsel] and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.'" *Tovar*, 541 U.S. at 92 (2004) (emphasis in original) (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)). The fact that a defendant "lack[s] a full and complete appreciation of all of the consequences flowing from his waiver" is not enough to make the waiver constitutionally infirm. *Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (holding that *Miranda* warnings sufficiently informed a defendant who waived his right to counsel during police questioning. *Id.* at 292). What is necessary is that "the record affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Faretta v. California*, 422 U.S. 806, 835 (1975).

The district court correctly adopted the magistrate judge's report and recommendation, and concluded that Robinson's waiver of trial counsel met

---

[3] The majority opinion first unmoors itself from AEDPA deference, and then relies upon this circuit's cases requiring federal district courts to instruct defendants on the consequences of waiving their rights to counsel in direct criminal cases. Such reliance is improper given that AEDPA applies. Indeed, the Supreme Court has "emphasized, time and again, that [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" *Lopez v. Smith*, 135 S. Ct. 1, 1 (2014).

these requirements.  Robinson's court-appointed counsel informed the state trial court that he "advised [Robinson] that the pretrial offer was in his best interest. . . . [and] that it is better to proceed with an attorney in this matter." The state trial court independently questioned Robinson, informing him that he would have to know the rules of procedure and could not rely on stand-by counsel.  It made sure that Robinson understood he had a right to counsel at all stages of the proceeding.  In fact, Robinson exercised this right by accepting court-appointed counsel at the preliminary hearing, at the arraignment and plea, and at sentencing.  However, he continued to assert that he wanted to represent himself at trial.  Robinson explained that although he "could use [counsel] to represent [him]," he had a lot of questions he wanted to personally ask the witnesses.  The state trial court inquired about Robinson's educational and employment background and was satisfied to learn that he had finished the tenth grade and could read, write, and speak English.  Given all of this, the state trial court concluded that Robinson had knowingly and intelligently waived his right to counsel.  I agree with the district court that this was sufficient under Supreme Court precedent.

## II.

In the alternative, if the majority opinion is correct in its determination that the state habeas court's decision is based on procedural default, the majority opinion should not ignore the procedural default in its review.  The default may be an independent and adequate state ground for denying relief. *Coleman v. Thompson*, 501 U.S. 722, 730–32 (1991).

This is not a mere technicality.  Comity and federalism demand that federal courts respect state procedural rules.  *Dretke v. Haley*, 541 U.S. 386, 392 (2004) ("The procedural default doctrine . . . has its roots in the general principle that federal courts will not disturb state court judgments based on

adequate and independent state law procedural grounds."). Accordingly, "when a state court decline[s] to address a prisoner's federal [habeas] claims because the prisoner had failed to meet a state procedural requirement," federal courts may not engage in habeas review. *Coleman v. Thompson*, 501 U.S. 722, 726, 729–30 (1991); *see also Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). The procedural requirement involved here is precisely the kind of rule that has been held to bar our review.[4]  *See* La. Code Crim. Proc. Ann. art. 930.4(C) (barring habeas review of claims that a petitioner failed to raise on direct appeal); *Cone v. Bell*, 556 U.S. 449, 465 (2009) (holding that "[a] claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration"); *Mathieu v. Tanner*, No. 14-546, 2014 WL 5465854, at *11 (E.D. La. Oct. 28, 2014) (holding that 930.4(C) is an independent and adequate ground for barring federal review).

Although "procedural default . . . is not a jurisdictional matter," but a "defense that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter," *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks omitted) (alteration in original), we are not prevented from raising the issue *sua sponte* unless the state "knowingly and intelligently relinquishe[s]" the defense. *Wood v. Milyard*, 132 S. Ct. 1826, 1832 n.4, 1834 (2012). The Supreme Court distinguished between waiver and

---

[4] The majority opinion contends that the procedural rule before us, art. 930.4(C) of the Louisiana Code of Criminal Procedure, may not "implicate the same comity concerns as, for instance, the requirement that a federal habeas petitioner first fairly present his claims to state courts." For support, the majority opinion cites a Fifth Circuit case addressing a different subsection, art. 930.4(A). As explained above, art. 930.4(C) is precisely the kind of rule that implicates comity concerns—it bars claims not raised on direct appeal to the state court, and when applied, prevents the state court from addressing such claims on the merits. In contrast, art. 930.4(A) does not implicate these concerns because it only bars habeas claims that have already been fully litigated in state court on direct appeal.

forfeiture in *Wood* to support its holding that forfeiture is insufficient to prevent a federal court from raising *sua sponte* a timeliness defense. *Id.* at 1833–34. The Court explained that because timeliness defenses, like exhaustion of state remedies defenses, are "founded on concerns broader than those of the parties," namely comity and federalism, federal courts have discretion to raise them *sua sponte*. *Id.* at 1833. As explained above, the procedural defense at issue here is founded on those exact same concerns of comity and federalism and thus requires knowing and intelligent waiver.

Here, the state merely forfeited the procedural defense. Therefore, we are permitted (but not required) to raise the defense *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89–90 (1997); *see Smith v. Johnson*, 216 F.3d 521, 523–24 (5th Cir. 2000) (raising a procedural bar in a § 2254 case *sua sponte* at the appellate level); *see also United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001) (extending this reasoning to the § 2255 context); *Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011); *United States v. McGrew*, 397 F. App'x 87, 91 (5th Cir. 2010); *United States v. Robinson*, 323 F. App'x 340, 341–42 (5th Cir. 2009). There is no good reason not to raise the issue here, particularly given the federalism and comity concerns at stake if we ignore Louisiana's procedural rules. This is especially appropriate here, where it is the majority opinion itself that has raised for the first time that the state habeas court's order was based on a procedural bar and thus does not merit AEDPA deference.

Accordingly, the majority opinion should have given the parties an opportunity to consider whether that procedural default is a bar to this federal habeas proceeding. If it is true that the state habeas court procedurally barred

No. 13-30016

Robinson's petition, we should request supplemental briefing on the effect, if any, of the procedural bar.[5]  For the foregoing reasons, I respectfully dissent.

---

[5] We have made similar requests in past habeas cases that might be procedurally barred.  *See, e.g.*, *United States v. Robinson*, 323 F. App'x 340, 342 (5th Cir. 2009).