PER CURIAM: *
This is an appeal from a district court’s decision denying habeas relief under 28 U.S.C. § 2254. Petitioner-Appellant Jam-aha Robinson was convicted by a Louisiana jury of cocaine distribution. He asked to represent himself during his criminal trial. The judge did not warn Robinson about the dangers of proceeding to trial pro se before allowing Robinson to represent himself. For instance, when Robinson told the judge that he did not understand the rules of procedure and evidence, the judge replied: “Well, you better learn real quick.” This Court granted a Certificate of Appealability (COA) on one question: whether Robinson “knowingly and intelligently waived his Sixth Amendment right to counsel.” For the reasons that follow, we answer this question in the negative and reverse and remand.
I. FACTUAL AND PROCEDURAL BACKGROUND
Robinson pleaded not guilty to cocaine distribution and asked to represent himself at trial. The trial judge asked Robinson why he wanted to represent himself, and he replied: “Because I feel like I could explain to the jury my point better, my point of view.” The court then asked Robinson if he understood that he had the right to an attorney at all stages in the proceedings, and he sáid he did.
In a colloquy about his competence, Robinson said that he had a tenth-grade high school education and had not obtained a GED. He said he was twenty years old and unemployed, though he had once worked as a “carpenter helper” for his uncle. Robinson informed the court that he was able to read, write, and speak English. The court ordered appointed counsel, Mr. Beebe, to remain in the courtroom as Robinson’s standby counsel. The court told Robinson he could choose to be heard by a judge or a jury, and he selected a jury trial.
Robinson then gave the court reason to doubt his understanding of the dangers of representing himself. The judge said: “I’m expecting you to proceed just as if you were a lawyer with the Rules of Evidence that the State of Louisiana requires all attorneys to abide by. Do you understand that?” Robinson said: “No sir.” The judge replied: “Well, you better learn real quick because you’re going to be expected to follow the rules of court. Do you understand that?” This time, Robinson said yes.
The judge again asked Robinson whether he was sure he did not want the assistance of appointed counsel: “Mr. Robinson, I want to make sure again we are clear, you do not want the help of Mr. Beebe, am I right on that?” Once again, Robinson gave the court reason to doubt he fully understood the consequences of his decision to waive trial counsel. “I need help,” he said, “but I got a lot of questions I want to ask myself.” After the court asked for clarification, Robinson tried to *201 explain himself. The judge and Robinson struggled to understand each other:
ROBINSON: I’m saying, hey, I could use him to represent me, but you know what I’m saying, my life is—
THE COURT: No, I don’t know what you’re saying; that’s why I’m asking you.
ROBINSON: I’m telling you right now, my life is — you know what I’m saying—
THE COURT: No, I don’t know what you’re saying; that’s why I need you to say what you—
ROBINSON: I have a lot of questions to ask myself.
THE COURT: You want to ask some questions to yourself?
ROBINSON: No, ask some questions myself to the—
THE COURT: Well, you can ask any questions that you want to yourself; we don’t know the—
ROBINSON: — the [confidential informant] and the agent.
THE COURT: I’m sorry.
ROBINSON: I got a lot of questions I want to ask the [confidential informant] and the agent.
THE COURT: Okay, all right. Are you ready to proceed?
Robinson told the judge he was ready, so the judge said, <cWell, then let’s commence the jury selection process.” This entire colloquy is memorialized in only nine pages of trial transcript.
At this point, court-appointed counsel interrupted: ‘Tour Honor, before you [commence the jury-selection process], I’d like the record to reflect that I have attempted to meet with Mr. Robinson ... on two occasions. He first advised me September 29th of this year that he wanted to represent himself in this matter.” Court-appointed counsel then said: “I advised him that the pretrial offer was in his best interest. I also advised him that it is better to proceed with an attorney in this matter, and he has chosen, of his own volition, to represent himself in this matter.”
The judge asked Robinson if he had “anything to add or subtract from that?” Robinson said he did not, and jury selection started.
The jury ultimately found Robinson guilty of cocaine distribution, and he was sentenced to ten years’ imprisonment. He was then resentenced as a habitual offender to fourteen years’ imprisonment.
Robinson directly appealed to the Louisiana First Circuit Court of Appeal, filing a counsel brief and a pro se brief that asserted several claims not pertinent to this appeal. The appellate court affirmed his conviction, and the Louisiana Supreme Court denied his application for discretionary review.
A. State Postconviction Proceedings
Robinson then filed a pro se application for postconvietion relief in Louisiana trial court that pertains to this appeal. Robinson asserted two claims for postconvietion relief that were not raised on direct appeal in either Robinson’s counsel brief or his pro se brief:. (1) that the jury was biased and (2) that the trial court allowed Robinson to represent himself without a knowing and intelligent waiver of his right to counsel — the issue on which a COA was granted in this case.
The state trial court denied Robinson’s application for postconvietion habeas relief. The court did not address Robinson’s juror-bias claim for relief but did handwrite the following text in the margin: “DENIED — Although defendant conducted his own defense appointed counsel was present during the proceedings.- The issue of *202 representation was not raised on appeal by appointed defense counsel.”
The intermediate state appellate court and state supreme court denied Robinson’s timely writ applications without stated reasons. Robinson then filed the instant pro se application for federal habeas relief in federal district court.
B. Federal Habeas Proceedings
The district court adopted in full the magistrate judge’s recommendation that Robinson’s habeas petition be denied on the merits. “The record is clear,” the magistrate judge concluded, “that the trial court was convinced that Robinson knowingly and intelligently waived his right to counsel and that he desired and was able to represent himself. This is all that was required to meet constitutional standards regarding the waiver.” The district court appears to have been persuaded by the presence of standby counsel and by appointed counsel’s representation that he had told Robinson it is “better to proceed with an attorney.”
In addition to the colloquy reproduced above,[1] the district court pointed to five other occasions during the two-day trial in which the judge also “addressed this issue with Robinson.” Review of the referenced portions of the transcript reveals that, in each instance, the trial judge simply asked Robinson whether he still wanted to proceed pro se.[2]
In the last portion of the transcript that the district court cited, Robinson initially indicated he wanted counsel to help with his closing argument:
THE COURT: Okay. Now one more time, just so the record will be clear, Mr. Robinson, would you like Mr. Beebe to give your closing statement?
ROBINSON: Yes, sir.
THE COURT: Huh[?]
MR. BEEBE: I’m uncomfortable giving a closing argument, because [Robinson] has presented the case in a much different fashion—
ROBINSON: I’m going to give the closing argument.
MR. BEEBE: — than I would.
THE COURT: All right.
After this exchange, the court heard closing arguments from the government and Robinson.
Robinson timely appealed, and we granted his application for a COA.
II. DISCUSSION
This Court has jurisdiction to review a district court’s decision denying habeas relief under 28 U.S.C. § 2253(a), provided that a circuit judge grants a certificate of appealability first, § 2253(c). We granted a COA on one issue: whether Robinson “knowingly and intelligently waived his Sixth Amendment right to counsel.” “In an appeal of the district court’s denial of ha-beas relief, this court reviews the district court’s findings of fact for clear error and its conclusions of law de novo, applying the same standard of review that the district court applied to the state court decision.” Roberts v. Thaler, 681 F.3d 597, 603 (5th *203 Cir.2012) (citations and internal quotation marks omitted).
As an initial matter, we must determine the appropriate standard of review. We then turn to the merits of Robinson’s habe-as claim under the applicable legal standard.
A. Standard of Review
We must first decide whether Robinson’s trial-counsel-waiver claim was “adjudicated on the merits” in state court within the meaning of § 2254. If so, we defer to the state court’s decision under § 2254(d). By contrast, “[f]or claims that are not adjudicated on the merits in the state court,” we do not apply the deferential scheme laid out under § 2254(d) and instead “apply a de novo standard of review.” Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir.2014). To determine whether the state court adjudicated the merits of a federal claim, we look to the “last reasoned state-court opinion.” Ylst v. Nunnemaker, 501 U.S. 797, 805-06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).
In this case, the last state court decision of any substance was the state trial court’s decision denying Robinson’s postconviction habeas application, so we begin there.
The state court’s decision denying Robinson’s application for postconviction relief is ambiguous in its reasoning. The state trial court handwrote “DENIED” across the petition and then handwrote the following text in the margin: “DENIED— Although defendant conducted his own defense appointed counsel was present during the proceedings. The issue of representation was not raised on appeal by appointed defense counsel.” The Louisiana intermediate court of appeals’ and supreme court’s decisions do not clarify the matter, as these courts denied Robinson’s applications for supervisory and discretionary writs by letter order without explanation. Accordingly, we must decide whether this ambiguous state-court decision constitutes an adjudication of Robinson’s federal claim on the merits or a procedural disposition.
The Supreme Court clarified in Harrington v. Richter that, “[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.” 562 U.S. 86, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011). “The Richter presumption applies even where the habeas petitioner raises a federal claim and the ‘state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question.’ ” Woodfox v. Cain (Woodfox II), 772 F.3d 358, 370 (5th Cir.2014) (quoting Johnson v. Williams, — U.S. -, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013)). “But the ‘presumption may be overcome when there is reason to think some other explanation for the state court’s decision is more likely.’ ” Id. (quoting Richter, 131 S.Ct. at 785)
The Fifth Circuit has “adopted a three-part test when it is unclear whether a state court’s opinion[ ] adjudicates a claim on the merits.” Id. at 371; accord Barrientes v. Johnson, 221 F.3d 741, 779 (5th Cir.2000). This inquiry “is akin to asking whether the state court decision was ‘substantive or procedural.’” Woodfox v. Cain (Woodfox I), 609 F.3d 774, 794 (5th Cir.2010) (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir.1999)). We consider the following three factors:
(1) what the state courts have done in similar cases;
(2) whether the history of the case suggests that the state court was aware *204 of any ground for not adjudicating the case on the merits; and
(3) whether the state courts’ opinions suggest reliance upon procedural grounds rather than a determination on the merits.
Woodfox I, 609 F.3d at 796 (quoting Mercadel, 179 F.3d at 274) (internal quotation marks omitted); accord Woodfox II, 772 F.3d at 371.[3]
Our cases applying this three-factor test have concluded that all three factors need not weigh in favor of a procedural disposition to hold that a claim has not been adjudicated on the merits within the meaning of § 2254. Gallow v. Cooper, 505 Fed.Appx. 285, 290 (5th Cir.2012) (per curiam) (citing Mercadel, 179 F.3d at 274). For example, in Mercadel, the petitioner filed his application for postconviction relief to the wrong court&emdash;directly to the Louisiana Supreme Court instead of to the convicting district court. 179 F.3d at 274. We noted that the Louisiana Supreme Court “consistently refused to consider the merits” in these circumstances, and that Mercadel’s petition was denied in a one-word order silent as to the reason. Id. Applying the three-factor test, we reasoned that the Louisiana Supreme Court’s one word denial of postconviction relief indicated that the third factor favored a merits adjudication, but the first and second factors “weighted] heavily in favor of ... treating the' state-court denial as a procedural decision,” so we applied de novo review. Id.; accord Jackson v. Johnson, 194 F.3d 641, 651 (5th Cir.1999) (concluding habeas claim’s “adjudication was not ‘on the merits’ within the intendment of the AEDPA” even though the “third factor weighs in favor of the conclusion that the state court disposition was on the merits.”). In other words, two of the three factors favoring a procedural disposition are enough.
With these principles in mind, we turn now to the first factor.

1. What Louisiana Courts Have Done in Similar Cases

The first factor weighs in favor of concluding Robinson’s Sixth Amendment claim received a procedural disposition because Louisiana courts routinely dismiss similar claims for postconviction relief as waived. Louisiana courts typically bar defendants from asserting, for the first time on collateral review, claims that were not raised on direct appeal. E.g., State v. Greco, 862 So.2d 1152, 1164 (La.Ct.App.2003) (reversing trial court for granting postconviction relief because “any claim is barred by [La.Code Crim. Proc.] art. 930.4 because the defendant failed to raise the issue on [direct] appeal”), writ denied, 882 *205 So.2d 1164 (La.2004); State v. Woodberry, 820 So.2d 638, 642 (La.Ct.App.2002), writ denied, 840 So.2d 544 (La.2003); State v. Gaines, 701 So.2d 688, 694 (La.Ct.App.1997) (“Relator’s claim is procedurally barred because it was not raised on appeal”), writ denied sub nom. State ex rel. Gaines v. State, 97-2610 (La.4/24/98); 717 So.2d 1160. The first factor favors a procedural disposition.

2, The History of This Case

Turning to the second factor, the history of this case indicates that the state court was aware of a ground — specifically, waiver — for not adjudicating Robinson’s habeas application on the merits. Two facts inexorably lead to this conclusion: (1) Robinson did not raise his Sixth Amendment claim on direct appeal, and (2) the state habeas court was clearly aware of this because it mentioned waiver in its order denying Robinson’s application for postconviction relief.
Fifth Circuit cases applying the second factor demonstrate that we may infer a state court’s awareness of a procedural ground from the circumstances. For instance, in Mercadel, we inferred that the Louisiana Supreme Court was aware of a procedural defect from the obviousness of the error. 179 F.3d at 275. Similarly, in Jackson, we concluded that, because there was no objection in the trial record to the prosecutor’s allegedly improper comments, the history of the case suggested that the state court found the prosecutorial-miscon-duct claim had been waived and not adjudicated on the merits. 194 F.3d at 651.
As in Jackson and Mercadel, the record supports the inference that the Louisiana courts found Robinson’s trial-counsel-waiver claim to have been waived because he did not raise this issue on direct appeal. Robinson did not raise the trial-counsel-waiver issue on direct appeal. Robinson’s appointed appellate counsel did not assert Robinson’s Sixth Amendment trial-counsel-waiver claim in Robinson’s brief on direct appeal. Robinson also filed a pro se brief in which he did not assert a Sixth Amendment waiver claim either.[4] The state post-conviction court was aware .of these omissions. In denying Robinson’s application, the court wrote: “The issue of representation was not raised on appeal by appointed counsel.” This is direct evidence that the state court was aware- of a procedural ground for not adjudicating the merits.
Thus, the second factor favors concluding that the state court disposed of Robinson’s application on procedural grounds.

3. The Louisiana Court’s Opinion

Finally, the third factor — the state-court opinion — does not weigh in favor of either a procedural or a merits adjudication. As discussed above, the last reasoned state-court decision gives some indication that the court relied on Louisiana’s waiver rule, Louisiana Code of Criminal Procedure article 930.4. After all, the court expressly stated: “The issue of representation was not raised on appeal by appointed counsel.” Cf. Fisher v. Texas, 169 F.3d 295, 300 (5th Cir.1999) (“A review of the opinion rendered by the Texas Court of Ap *206 peals in this ease clearly reveals that the state court did not adjudicate the merits of Fisher’s Baiscm-religion claim. The state court explicitly decided the religion issue on waiver grounds....”). On the other hand, the court also noted that, “[a]lthough the defendant conducted his own defense appointed counsel was present during the proceedings.” This sentence suggests a merits adjudication. These sentences appear at odds with one another. In light of this ambiguity, the third factor does not bear on our analysis. See Mercadel, 179 F.3d at 274 (noting that the “third Green factor does not come into play in this case” because the state court decision does not indicate one way or another whether the federal claim was adjudicated on the merits or disposed of on procedural grounds).

4. Analysis

Because two of the three Mercadel and Woodfox factors favor a procedural disposition, we conclude that Robinson’s Sixth Amendment claim was not adjudicated on the merits within the meaning of § 2254. The first two factors weigh in favor of finding that Robinson’s Sixth Amendment claim was disposed of on procedural grounds, and the third factor does not weigh in either direction.
We reached a similar conclusion in Jackson. There, we evaluated a one-sentence Texas Court of Criminal Appeals (CCA) order denying habeas relief. Unlike in this case, we noted that because of the CCA’s failure to mention procedural grounds, the third factor weighed in favor of a merits adjudication. Jackson, 194 F.3d at 651-52. Nonetheless, because the other two factors favored a procedural disposition under Texas’s waiver rule, we evaluated the claim de novo. Id.
The record in this case differs in important ways from other cases in which we have held that a state court adjudicated a federal claim on the merits within- the meaning of § 2254.. For instance, in Woodfox I, we evaluated a similarly cryptic Louisiana court order denying postconviction relief. 609 F.3d at 796-97. We observed that because the state filed a brief opposing postconviction relief in which it pressed only merits arguments, the second factor (the history of the case) supported a merits adjudication. Id. Under the third factor, we noted that the state court specifically stated the petitioner’s “allegations are without meñt.” Id. at 797. Accordingly, because two of the three factors favored concluding that there had been a merits adjudication, we applied § 2254, explaining there was “simply no indication in the state court adjudication that suggests a reliance on any procedural vehicle rather than the merits to deny relief.” Id. In stark contrast here, the state did not file an opposition to Robinson’s application for postconviction relief in which it argued the merits. And unlike the state court order in Woodfox I, which stated the “allegations are without merit,” here, the state court specifically mentioned a procedural vehicle to deny relief — that Robinson failed to raise his trial-counsel-waiver claim on direct appeal. Cf. Barrientes, 221 F.3d at 779 (“[T]he Texas Court of Criminal Appeals was not put on notice by the State that this claim was waived. Our inquiry under this factor [therefore] weighs in favor of concluding that the claim, was adjudicated on the merits.”).
Therefore, the procedural defect in Robinson’s application for postconviction relief — together with the history of case and the statement by the state court indicating it was aware that Robinson had failed to raise this issue on direct appeal — leads us to the conclusion that the state court denied relief on procedural grounds. Thus, we proceed to analyze the merits de novo.

*207
5. The Dissent

We pause briefly to address the dissent. The dissent essentially disagrees with us on two related issues pertaining to the standard of review. First, the dissent would apply the Richter presumption and conclude that § 2254(d)’s deferential standard of review applies without regard to the three-factor test we applied in Merca-del and, more recently, in Woodfox II. Post at 211-14. Second, the dissent suggests that, even if the state court did not consider the merits of Robinson’s federal habeas claim, we should consider sua sponte applying the procedural bar to deny his pro se petition for federal habeas relief. Post at 214-16.[5]
The dissent’s first point appears to proceed from the following premise: If the parties agree, forfeit, waive, or concede that a federal habeas claim was adjudicat-. ed on the merits, then they have not rebutted the Richter presumption, and we should apply § 2254(d) without examining the record for ourselves.[6] We disagree. This Court, and. “not the parties,” “must determine the appropriate standard of review.” United States v. Torres-Perez, 777 F.3d 764, 766, 2015 WL 394105, at *1 (5th Cir.2015) (citing United States v. Vontsteen, 950 F.2d 1086, 1091 (5th Cir.1992) (en banc)). Similarly, in a recent death-penalty case, the parties agreed that the habeas' petitioner had procedurally defaulted; we nonetheless evaluated 4he record for ourselves and held that the claim had been adjudicated on the merits within the meaning of § 2254(d). Ward v. Stephens, 777 F.3d 250, 257-59 & n. 3 (5th Cir.2015). We explained that we were “obligated to decide whether ... § 2254’s deferential standard of review applies, regardless of the parties’ positions on the matter.” Id.[7] *208 We see no reason to depart from this fundamental principle of appellate review in this case. Accordingly, we follow Ylst’s instruction to look through the unexplained orders to the last reasoned state-court decision to assess its resolution of Robinson’s claim — even if, due to inadvertence or a pro se petitioner’s ignorance, the district court neglected to do so.
The dissent reads Woodfox II and Hoffman to support its position that the standard of review has been in effect waived by Robinson; we read these cases as cutting against this position. In Woodfox II, even though the law of the ease applied, we still applied our three-part test to evaluate the state-court record and independently assess whether the last reasoned decision constituted an adjudication on the merits. 772 F.3d at 369-72. Hoffman is not to the contrary. There, the last reasoned state-court decision “did not expressly address the claim that trial counsel were ineffective,” so we applied the Richter/Johnson presumption and held that § 2254(d) applied. Hoffman, 752 F.3d at 430. As explained above, unlike Robinson’s federal claims that the state habeas court did not address — claims on which we denied COA (applying the Richter/Johnson presumption) — here, the state court issued a reasoned explanation for why a Louisiana procedural rule precluded it from considering .Robinson’s trial-counsel-waiver claim. Thus, Hoffman is inapposite.[8] The dissent’s unsupported assertion that the “distinction” between a silent state-court opinion and an ambiguous one “makes no difference,” Post at 213, is contrary to our case law. As discussed above, federal courts routinely apply two different doctrinal lines of cases to these distinct scenarios, and in the Fifth Circuit, we apply a three-factor test to ambiguous opinions.[9]
We also disagree with the dissent’s invitation to apply the procedural bar sua sponte. The dissent agrees that procedural default constitutes a nonjurisdictional affirmative defense that the State has forfeited in this case. Post at 215. -Indeed, the Supreme Court has said that “procedural default is normally a ‘defense’ that the State is ‘obligated to raise’ and ‘pre-servé]’ if it is not to ‘lose the right to assert the defense thereafter.’ ” Trest v. Cain, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (alteration in original) (quoting Gray v. Netherland, 518 U.S. 152, 166, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)). But the dissent nonetheless suggests we should apply the default to bar the petitioner’s claim. Post at 214-16.
We decline to do so for two reasons. First, the Supreme Court has declined to approve the practice of circuits sua sponte raising procedural bars. See Trest, 522 U.S. at 90, 118 S.Ct. 478 (“Louisiana ... would like us to go beyond the question presented and hold that the law permitted (though it did not require) the Fifth Circuit to raise the procedural default sua sponte.... [W]e do not believe this, is an appropriate case in which to examine that question.... ”). On the contrary, the Supreme Court has specifically held that “[a] court of appeals is not ‘required’ to raise the issue of procedural default sua sponte.” Id. at 89, 118 S.Ct. 478.[10] Second, assum *209 ing we were permitted to sua sponte assert the procedural default on behalf of the State, we would decline to do so against this pro se petitioner whose claim implicates his Sixth Amendment right to counsel, a claim that he fairly presented to the state court and that, for the reasons stated, has never been actually adjudicated on the merits by any tribunal.[11]
B. Robinson’s Sixth Amendment Claim
The Sixth Amendment guarantees the right of the accused “to have the Assistance of Counsel for his defence.” U.S. Const, amend. VI. In Faretta v. California, the Supreme Court recognized that the Sixth Amendment also guarantees the accused the right to proceed without counsel if he “knowingly and intelligently” elects to do so. 422 U.S. 806, 807, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court explained that, because an accused proceeding pro se “relinquishes ... many of the traditional benefits associated with the right to counsel,” the trial judge must ensure the accused makes this choice “‘with eyes open.’” Id. at 835, 95 S.Ct. 2525 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)) The Faretta Court emphasized that an accused “should be made aware of the dangers and disadvantages of self-representation.” Id. It held that the defendant had knowingly and intelligently refused counsel: “The record affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will.” Id. The Court also noted that the “trial judge had warned [the defendant] that he thought it was a mistake not to accept the assistance of counsel.” Id. at 835-36.

1. The Parties’Arguments

Robinson argues “the trial court failed to warn [him] of the dangers and perils of self-representation” in violation of the Sixth Amendment. Robinson points out that “at no point” did the judge “urge Mr. Robinson not to represent himself.” As for the district court’s reliance on appointed counsel’s representation to the court that he had “advised [Robinson] it is better to proceed with an attorney,” Robinson makes two points. First, Robinson argues “the Fifth Circuit has specifically rejected warnings given by counsel rather than the court,” referring to United States v. Davis, 269 F.3d 514, 518-19 (5th Cir.2001). Second, Robinson argues appointed counsel’s “warning was too general for a knowing and voluntarily waiver, even if it had been given by the trial court,” referring to United States v. Jones, 421 F.3d 359, 362 (5th Cir.2005).
The State of Louisiana counters by asserting that “the trial court satisfactorily advised Robinson of the obstacles he would face representing himself....” The State *210 argues that, before the trial court accepted Robinson’s waiver of counsel, the judge “discussed his choice with Robinson.” Robinson, the State argues, “understood that he could choose a jury or a judge trial and he selected a jury trial.” He also “understood that the court could not advise him of the law,” the State continues, and the trial judge “repeatedly warned Robinson that he would be expected to follow the rules of procedure.” The State concedes that “a ‘stand-by’ attorney does not qualify as assistance of counsel mandated by the Sixth Amendment,” but it argues the presence of standby counsel “should be considered as a factor in determining whether Robinson received a fair trial.” The State neglects to cite authority for this proposition.

2. Analysis

We have held that “the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment.” United States v. Taylor, 933 F.2d 307, 312 (5th Cir.1991). The Fifth Circuit has also interpreted the Supreme Court’s decisions to require that the trial judge must be the one to warn the accused about the dangers of proceeding to trial without the assistance of counsel. In Davis, the trial court did not so warn the accused, and instead relied on counsel’s warning to the defendant “that [counsel] d[id] not believe it [was] in [the defendant’s] best interest ... to participate in the trial” without the assistance of counsel. 269 F.3d at 517 & n. 1. The trial court allowed the defendant, on his own, to cross-examine nine government witnesses and examine two defense witnesses. Id. at 517. Appointed counsel handled the rest of the defense, including opening and closing statements. See id.
The jury found the defendant guilty, and we vacated the conviction and remanded for a new trial. Id. at 516-17. We emphasized that it is the judge’s obligation “to warn [defendants] of the perils and disadvantages of self-representation,” and we concluded that “[t]he district court failed to discharge this responsibility.” Id. at 520. “The [district] court’s reliance on the warnings against self-representation given by [the defendant’s] counsel ... was not sufficient,” we explained. Id.
Here, the trial court’s reliance on standby counsel’s representations was insufficient to establish a knowing and intelligent waiver of Robinson’s right to counsel as a matter of law under Fifth Circuit precedent.[12] At no point did the trial judge specifically warn Robinson of the dangers of proceeding pro se. Cf. Iowa v. Tovar, 541 U.S. 77, 88-89, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (“[The defendant] must be warned specifically of- the hazards ahead.”). Instead, the trial court appears to have relied on standby counsel’s representations that he had previously “advised [Robinson] that it is better to proceed with an attorney in this matter.” Under Davis, this is insufficient. See 269 F.3d at 519. Moreover, even assuming arguendo the trial judge himself advised Robinson that it was “better to proceed with an attorney,” this generic warning would also be *211 insufficient to establish a knowing and intelligent waiver. See Jones, 421 F.3d at 364 (vacating the defendant’s criminal conviction where “the district court recommended to [the defendant] that he have an attorney and stated that his appointed counsel was highly qualified” because “the district court took no steps, except in the most general way, to insure that Jones was ‘aware of the dangers and disadvantages of self-representation’” (emphasis added) (quoting United States v. Joseph, 333 F.3d 587, 590 (5th Cir.2003))).
■ The district court and the State point to the fact that, “[o]n no less than five occasions before and during the trial, the trial court ... ensured that [Robinson] still wanted to proceed without the assistance of counsel.” This portion of the record establishes that Robinson voluntarily and competently waived his right to counsel, but it does not show that this waiver was “knowing” and “intelligent” as required under the Sixth Amendment. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (“[T]he accused must ‘knowingly and intelligently forgo’ ” the “traditional benefits associated with the right to counsel.” (citation omitted)). That the judge repeatedly confronted Robinson with the choice to be represented by counsel is not enough. The question is not whether the defendant voluntarily chose to represent himself; the “question is whether his decision was understandingly and intelligently made: that is, did he make this choice “with eyes open.’” Maynard v. Meachum, 545 F.2d 273, 278-79 (1st Cir.1976) (quoting Adams, 317 U.S. at 279, 63 S.Ct. 236) (remanding habeas petition).
Robinson’s statements indicated that he did not understand the dangers of proceeding to trial without counsel. The judge told Robinson that he expected Robinson “to proceed just as if [he] were a lawyer with the Rules of Evidence that the State of Louisiana requires all attorneys to abide by. Do you understand that?” Robinson replied: “No sir.” The judge responded: “Well, you better learn real quick because you’re going to be expected to follow the rules of court.” This dialogue does not establish that Robinson knew “what he [was] doing and [made] his choice ... with eyes open.” Adams, 317 U.S. at 279, 63 S.Ct. 236.
Therefore, we hold that Robinson did not knowingly and intelligently waive his right to trial counsel.
III. CONCLUSION
For the foregoing reasons, we REVERSE the district court’s judgment denying habeas relief and REMAND this case to that court with instructions to order the State of Louisiana to' either provide Jamaha Robinson a new trial or release him from custody within 180 days of the date .of the district court’s order on remand.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. See supra Part I.

. On the first occasion, the judge asked Robinson: "Now, would you like Mr. Beebe to represent you? He's available to you.” Later, the judge said: “And once again, Mr. Robinson, I want to ask you if you want to represent yourself, or if you want Mr. Beebe to speak for you today, to represent you today.” The judge also later asked: "Now you do understand that ... you have the right to have the lawyer do the questioning for you. But you're choosing to represent yourself; am I correct?”

. We note that this situation&emdash;unclear and ambiguous conflicting statements by the state court&emdash;is different from the ordinary circumstance in which the state court denies or dismisses a habeas petition without explanation. As noted, unexplained state-court decisions typically warrant the deferential standard of review under § 2254(d). Richter, 131 S.Ct. at 784-85 (citing Ylst, 501 U.S. at 803, 111 S.Ct. 2590); accord Hoffman, 752 F.3d at 438-39 (applying the Richter presumption to an unexplained state-court decision denying a habeas petition). By contrast, we apply a three-part test to evaluate a state court decision with an unclear explanation. Compare Brian R. Means, Federal Habeas Manual § 3:9 “Unexplained state court decisions” (2014) ("Where a state court’s decision is unaccompanied by an explanation, ... it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.” (quoting Richter, 562 U.S. 86, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011)) (internal quotation marks omitted)), with id. § 3:13 “Ambiguous state court opinions” (noting that, when a state court gives reasons for its denial of a habeas petition, federal courts must ascertain "whether the state court’s disposition of a petitioner's federal claim was on the merits” and listing the various factors that courts have considered).

. See State v. Robinson, 2009-0713, at *1 (La.App. 1 Cir. Sept. 11, 2009), 2009 WL 3162234 (unpublished) ("A counseled brief filed on [Robinson's] behalf argues only that the evidence was insufficient to support his conviction. Defendant has also filed a pro se brief arguing he was deprived of his right to a fair trial when the trial court allowed the inconsistent testimony of an agent and the confidential informant regarding who performed the search of the confidential informant; and that his arrest and conviction were illegal as a result of the confidential informant’s negotiation with the State to testify against defendant in exchange for favorable consideration.”).

.The dissent reads the district court’s brief statement as stating alternative holdings: one procedural and one on the merits. Post at 212-13. For the reasons stated in our discussion of the Mercadel and Woodfox II factors above, we do not read the state court's opinion this way, and we find the dissent’s logic to be circular. As the Second Circuit explained in Jimenez v. Walker, 458 F.3d 130 (2d Cir.2006), federal courts apply the three-factor test at the outset to answer the question the dissent assumes the answer to-whether: (1) the state court’s decision rested on federal grounds, (2) the state court’s decision rested on primarily state grounds, or (3) the state court’s decision rested on “interwoven” or alternative federal merits and state procedural grounds. See id. at 145 & n. 16 ("To reiterate, the three clues to the basis of a state court’s decision are (l).the face of the state-court opinion, (2) whether the state court was • aware of a procedural bar, and (3) the practice of state courts • in similar circumstances.”). As Jimenez makes clear, federal courts apply the presumption from Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) only after they first apply three factors to determine the basis of the state court’s decision and only if, on that basis, the state court's decision falls into the third category. Rather than assuming the answer to this threshold question, we apply the Fifth Circuit’s three-factor test and conclude that the state court’s decision in this case "fairly appearfs] to rest primarily on state procedural law.” See Jimenez, 458 F.3d at 145. Thus, we do not disagree with the dissent’s point that, if the state court's decision rested on alternative procedural and merits grounds, then AEDPA deference would apply — indeed, this point is not controversial. See Post at 213 n. 1 (collecting cases). Rather, we disagree with the dissent’s premise that the state court's decision rested on alternative grounds; instead, we apply our obligatory three-factor test to conclude the state court’s decision rested on primarily state procedural ' grounds.

. See Post at 212 ("The parties-have assumed throughout this habeas case that Robinson’s claims ... were adjudicated on the merits,” and, "[bjefore the district court and our court, the parties briefed only the merits.”).

. We note that the contrary rule would apply AEDPA in a situation Congress did not intend and would be inconsistent with the practice in other circuits. See, e.g., Brown v. Smith, 551 F.3d 424, 428 & n. 2 (6th Cir.2008) (applying *208 de novo review after concluding that "[t]he district court erred in presuming that AED-PA’s deferential standard applied to this case” reasoning that, even though the petitioner did not raise this issue, "a party cannot ‘waive’ the proper standard of review by failing to argue it”).

.See supra note 3 and accompanying text.

. See supra note 3 and accompanying text.

. The Supreme Court has approved federal habeas courts that have sua sponte raised equitable defenses, such as exhaustion (i.e., fairly presenting a claim to the state courts), see, e.g., Wood v. Milyard, - U.S. -, 132 S.Ct. 1826, 1836, 182 L.Ed.2d 733 (2012) (noting that these equitable "judicially created *209 defenses [are] rooted in concerns of comity and finality that arise when federal courts collaterally review state criminal convictions”), but the Court has not yet approved sua sponte invocation of state procedural bars by federal habeas courts against petitioners who availed themselves fully of state-court remedies. Such procedural bars do not implicate the same comity concerns as, for instance, the requirement that a federal habeas petitioner first fairly present his claims to state courts. Cf. Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir.1994) ("The bar imposed by [Louisiana Code of Criminal Procedure] article 930.4(A) is not a procedural bar in the traditionál sense, nor is it a decision on the merits.”).

. The dissent also suggests supplemental briefing is an option. Post at 216 & n. 5. We cannot see how supplemental briefing would permit the State to reanimate- a forfeited non-jurisdictional affirmative defense, rather than simply invite wasted effort and expense for the State of Louisiana.

. The dissent takes issue with our invocation of circuit precedent in the habeas context, explaining that this "reliance is improper given that AEDPA applies." Post at 214 n. 3 (emphasis added). For the reasons stated supra Part 11(A), we do not take it as a “given” that AEDPA applies, and we instead confront the important threshold question whether Robinson's trial-counsel-merits claim was adjudicated on the merits within the meaning of § 2254(d). It is only because we first conclude that his claim was not adjudicated on the merits, as a threshold matter, supra Part 11(A), that we are then guided by Fifth Circuit case law interpreting the Sixth Amendment's constitutional protections.